Rollin LEWIS, Appellant,

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WARE-HOUSEMEN AND HELPERS OF AMERICA, LOCAL UNION NO. 771 and Kenneth C. Laukhuff.**

No. 86–1644.

United States Court of Appeals,
Third Circuit.

Argued April 9, 1987.

Decided Aug. 21, 1987.

David L. Williams (argued), Morgan, Hallgren, Crosswell & Kane, P.C., Lancaster, Pa., for appellant.

Ira H. Weinstock (argued), Gerard M. Mackarevich, Ira H. Weinstock, P.C., Harrisburg, Pa., for appellees.

Before SLOVITER, BECKER and GARTH, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

### *Facts*

This appeal arises from the district court's dismissal of an action brought by a member of a local union against his Local and its president for breach of a provision of the international union's constitution. Appellant Rollin Lewis is employed by Yellow Freight System, Inc. (Yellow Freight) and is a member of appellee Local Union No. 771 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Local 771), which has a collective bargaining contract with Yellow Freight. Appellee Kenneth C. Laukhuff was the president of Local 771 and Lewis was the shop steward at the time the actions at issue occurred. In the procedural posture of this case, we must accept as true the well-pleaded allegations of the complaint.

The complaint alleges that Yellow Freight unilaterally implemented an attendance/absentee policy (absentee policy) in September 1984 and that as a result of a group grievance concerning the policy, the Central Pennsylvania Joint Area Grievance Committee ruled that Yellow Freight must first negotiate with Local 771. Such negotiations were then conducted. By a letter dated April 18, 1985, signed by Laukhuff and the secretary-treasurer of the Local, Local 771 informed its members of Yellow Freight's negotiating position, stated that the Local "will not be placed in the position of forcing policies upon our members," requested the members to vote on the absentee policy on the secret ballot that was enclosed, and stated that, "[a] 51% majority is necessary to implement these policies" and "[a] majority vote opposing these policies would refer the case to Central Pennsylvania Joint Area Grievance Committee." App. at 13. The Yellow Freight road drivers voted against the absentee policy as outlined in the April 18 letter. App. at 6.

By letter dated May 20, 1985 and signed by Laukhuff, the members of Local 771 were informed that an absentee policy had been agreed to by Local 771 and Yellow Freight for a trial period of 60 days. App. at 15. Lewis alleges that at the time the absentee policy agreement was executed by Yellow Freight and Local 771, Laukhuff represented to the union representatives that the policy would be put to a vote within the 60–day trial period. App. at 7. Lewis was one of the union representatives who signed the agreement. App. at 19. By letter dated July 15, 1985, Laukhuff informed the members of Local 771 that "the company has the right to establish an absentee policy" and that "the policy cannot be voted on." App. at 24.

The complaint further alleges that on August 5, 1985 Lewis filed a grievance protesting the absentee policy as too strict and as forcing a driver to drive while fatigued or sick, and complaining about the inability of the members to vote on the policy. App. at 26–27. The grievance was dismissed by the Central Pennsylvania Joint Area Grievance Committee on September 12, 1985 on the ground that "the case is improper before the Committee." App. at 29. On September 28, 1985 a group grievance was filed by members of Local 771 asking that the absentee policy be renegotiated and be voted on as promised before its approval. That grievance was also denied as "improper before the committee" on November 6, 1985. App. at 40.

Lewis then filed a complaint against Local 771 and Laukhuff in state court on March 10, 1986, which was within six months of the denial of his grievance. The complaint asserts that the actions of defendants in denying Lewis and other union members the right to vote on the disputed

absentee policy is in violation of Article XVI, Section 4(a) of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America Constitution which requires that amendments to local or area supplements of the master collective bargaining contract (such as the absentee policy) which are voluntarily negotiated must be approved by a secret ballot majority vote of the affected members. The action was removed by the defendants to the United States District Court for the Eastern District of Pennsylvania on the ground that it alleges a violation of plaintiff's rights under section 301 of the Labor Management Relations Act.

Defendants then filed a motion to dismiss the complaint on the ground that it was filed more than six months after the July 15, 1985 letter advising the union members that the policy would not be voted on. The district court did not reach this issue but dismissed Lewis' complaint, citing *West v. Conrail*, 780 F.2d 361 (3d Cir.1985). Lewis appeals from that order.

## II.

### *Jurisdiction*

■ Although no party raised an issue of subject matter jurisdiction, every federal appellate court "has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts,'" in every appeal presented to it, regardless of whether the parties contest jurisdiction. *Bender v. Williamsport Area School District*, 475 U.S. 534, ——, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934)). *See also Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Philadelphia*, 657 F.2d 29, 31 (3d Cir.1981). In response to this court's *sua sponte* inquiry, the parties assert that a district court has subject matter jurisdiction over a case where individual members of a union have sued their union for breach of a union constitution by virtue of section 301(a) of the Labor Management

Relations Act (LMRA), 29 U.S.C. § 185(a). That issue has not previously been addressed by this court.

Section 301(a) provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce …, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

In *United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the United States & Can. v. Local 334, United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the United States & Can.*, 452 U.S. 615, 622, 101 S.Ct. 2546, 2550, 69 L.Ed.2d 280 (1981) (*Journeymen*), the Court held that "a union constitution is a 'contract' within the plain meaning of § 301(a)." In *Journeymen*, the local union brought suit against its parent international union, alleging a violation of the International's constitution. The Court characterized the constitution as a "contract between labor organizations." *Id.* at 619, 101 S.Ct. at 2549. Thus, *Journeymen* established the proposition that section 301(a) provides a basis for jurisdiction when one union sues an affiliated union for violation of its constitution. In so holding, the Court expressly rejected this court's position that only disputes with a "significant impact" on labor-management relations should trigger section 301(a) jurisdiction. 452 U.S. at 623–25, 101 S.Ct. at 2550–52.

The appeal before us raises an issue not considered in *Journeymen*, that is whether an individual union member may sue under section 301(a) for a violation of the International's constitution.[1] In *Kinney v. International Bhd. of Elec. Workers*, 669 F.2d 1222, 1229 (9th Cir.1982), the only court of

---

1. The *Journeymen* Court expressly reserved this issue. *See* 452 U.S. at 627 n. 16, 101 S.Ct. at 2553 n. 16.

appeals decision on this issue after *Journeymen,* the court reaffirmed its earlier precedent that an individual union member may bring suit on a union constitution against a labor organization. *Accord Alexander v. International Union of Operating Eng'rs,* 624 F.2d 1235, 1238 (5th Cir. 1980) (union member may bring action under section 301(a) against Local and International for violation of International's constitution). This is in line with the earlier decision in *Abrams v. Carrier Corp.,* 434 F.2d 1234, 1248 (2d Cir.1970), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971), holding that union members could bring an action under section 301(a) alleging that the International violated the charter and bylaws that it granted to the local union if the members alleged that the local union failed to enforce the rights protected in those documents.[2]

Two circuits, in opinions decided before *Journeymen,* held that section 301(a) does not provide jurisdiction in a suit by individual union members for violations of a union constitution. *See Trail v. International Bhd. of Teamsters,* 542 F.2d 961, 967–68 (6th Cir.1976); *Adams v. International Bhd. of Boilermakers,* 262 F.2d 835, 838 (10th Cir.1959). The *Trail* decision has been considered controlling by district courts in that circuit even after *Journeymen. See, e.g., Warner v. McLean Trucking Co.,* 627 F.Supp. 203, 217–18 (S.D.Ohio 1985); *Frenza v. Sheet Metal Workers' International Ass'n,* 567 F.Supp. 580, 584–85 (E.D.Mich.1983); *see also Petrowski v. Kilroy,* 609 F.Supp. 220, 222–24 (E.D.Pa. 1985). We believe, however, that the reasoning of these two decisions has been undermined by subsequently decided Supreme Court cases and hold that an individual union member may have standing to bring a section 301(a) suit against a union based on the union's constitution.

We begin with the analysis employed in the Court's opinion in *Journeymen.* In finding that a union constitution is a contract between labor organizations within the meaning of section 301(a) and that a

"significant impact" on labor-management relations is not required for federal jurisdiction, the Court stated:

> But apparently Congress was also concerned that unions be made legally accountable for agreements into which they entered among themselves, an objective that itself would further stability among labor organizations. Therefore § 301(a) provided *federal* jurisdiction for enforcement of contracts made by labor organizations to counteract jurisdictional defects in many state courts that made it difficult or impossible to bring suits against labor organizations by reason of their status as unincorporated associations.

452 U.S. at 624, 101 S.Ct. at 2551 (emphasis in original). The Court stated further:

> Surely Congress could conclude that the enforcement of the terms of union constitutions—documents that prescribe the legal relationship and the rights and obligations between the parent and affiliated locals—would contribute to the achievement of labor stability.

*Id.*

The congressional interests in insuring union accountability and achievement of labor stability, which were the bases for the holding in *Journeymen* that a local union could enforce the terms of a union constitution under section 301(a), are similarly furthered when an individual union member sues for enforcement of those terms. In both instances permitting such suits contributes to the ultimate goal of enforcement of contracts made by labor organizations. Where the local union is acting with the International to violate the constitution, suit by individual members may be the only means to effectuate the congressional goals.

The argument that section 301(a) should be limited to suits brought by labor unions because it speaks only of contracts "between labor organizations" was expressly rejected in *Smith v. Evening News Ass'n,*

---

**2.** Where, as here, the suit is against a local union, we need not reach the issue discussed by the Second Circuit in *Abrams,* 434 F.2d at 1248, about the need to allege a failure of a Local's duty of fair representation before suit against its International may proceed.

371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). There the Court held that section 301(a) provides jurisdiction for suits by union members for violation of collective bargaining agreements, even though the members are not parties to such agreements. The Court stated that "[t]he rights of individual employees concerning rates of pay and conditions of employment are a major focus of the negotiation and administration of collective bargaining contracts," 371 U.S. at 200, 83 S.Ct. at 270, and treated individual union members as third party beneficiaries of such contracts. If individual union members are third party beneficiaries of collective bargaining agreements, it follows that they have the same status with respect to union constitutions. After *Journeymen,* the rights created by a union constitution are enforceable in federal court.

If third party beneficiaries of the one agreement can sue in federal court, then so can third party beneficiaries of the other. With respect to both agreements, there is a need for uniformity of construction in state and federal courts, a goal that can be attained only if all parties have standing to sue in both fora. *See Smith,* 371 U.S. at 200–01, 83 S.Ct. at 270. We, therefore, conclude that under section 301(a) individual union members can sue in federal court for violations of provisions of their union's constitution.

The Sixth Circuit in *Trail* relied for its contrary conclusion "primarily [on] the reluctance of Congress and the courts to authorize judicial intervention in the internal affairs of unions." 542 F.2d at 968. A similar argument was made by respondent in *Journeymen* in arguing that "§ 301(a) should *never* extend to disputes arising under union constitutions because '[t]he 80th Congress clearly did not intend to intervene in the internal affairs of labor unions.'" 452 U.S. at 625, 101 S.Ct. at 2552 (emphasis in original). We believe that the Court's emphatic rejection of that argument in *Journeymen, id.* at 625–26, 101 S.Ct. at 2552 undercuts the reasoning and the conclusion in *Trail.*

Similarly, in *Adams,* the only other circuit decision holding that there was no federal subject matter jurisdiction over a suit by union members against their international union for violation of the International's constitution and bylaws, the Tenth Circuit based its conclusion on the ground that section 301(a) was limited "by its express terms" to suits between an employer and a labor organization or between labor organizations. 262 F.2d at 838. As discussed above, the later *Smith* decision construes the statutory language more broadly to encompass suits by a union member.

We emphasize that the statutory language of section 301(a) does not state that suit under that section must be brought by a labor organization. It states only that the suit must be based on a contract between labor organizations. *See Smith,* 371 U.S. at 200, 83 S.Ct. at 270. In addition, the Court in *Smith* expressed concern that a reading of section 301(a) that would prohibit federal court jurisdiction in suits by individual union members would raise the possibility that contract terms would be given different meanings under state and federal law and that such a result " 'would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.' " 371 U.S. at 200–01, 83 S.Ct. at 270 (quoting *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962)). The possibility that the terms of a union constitution would also be given different meanings in state and federal courts, depending solely on whether an individual union member or a union itself brings suit, is similarly "disruptive."

Accordingly, we hold that a federal court has jurisdiction under section 301(a) over suits brought by an individual union member against his or her local union or the international union for violation of a union constitution. We therefore turn to the statute of limitations issue, which was the ground on which Lewis' suit was dismissed.

### III.

#### *Applicable Statute of Limitations*

■ Lewis argues that the district court erred in holding that the applicable statute

of limitations for Lewis' section 301(a) claim for breach of the union constitution is the six-month limitations period of section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). Instead, he contends, the applicable statute of limitations is the Pennsylvania four-year statute of limitations for breach of contract actions. *See* 42 Pa.Cons.Stat.Ann. § 5525(8) (Supp.1987).

In *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983), the Supreme Court held that because the LMRA does not provide a limitations period for suits brought pursuant to section 301, federal courts entertaining such suits must "borrow" the most appropriate limitations period from some other source. Although the Supreme Court has "generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law," *id.,* "[i]n some circumstances ... state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law. In those instances, it may be inappropriate to conclude that Congress would choose to adopt rules at odds with the purpose or operation of federal substantive law." *Id.* at 161, 103 S.Ct. at 2289. The Court elaborated on the appropriate procedure to use:

> [W]hen a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation made that rule a significantly more appropriate vehicle for interstitial lawmaking [application of the analogous federal statute is appropriate].

*DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294.

In *DelCostello,* the Court held that the appropriate limitations for "hybrid" section 301 suits in which an employee sues the employer for breach of the collective bargaining agreement and the union for breach of the duty of fair representation is the six-month period of section 10(b) of the NLRA for making charges of unfair labor practices to the Board. The Court noted the "family resemblance" between an unfair labor practice charge and a charge of breach of the duty of fair representation brought by an employee against a union. 462 U.S. at 170, 103 S.Ct. at 2293. The Court also found that "[a]t least as important as the similarity of the rights asserted" was the "close similarity of the considerations relevant to the choice of a limitations period." 462 U.S. at 170–71, 103 S.Ct. at 2294. In both situations, the federal policy in promoting stable bargaining relationships necessitates prompt resolution of disputes between an individual and the union or the individual and the employer. *Id.* at 171, 103 S.Ct. at 2294.

The Court's reasoning in *DelCostello* has led us to apply the six-month limitations period of section 10(b) beyond the situation presented in that case. *See Taylor v. Ford Motor Co.,* 761 F.2d 931 (3d Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 849, 88 L.Ed.2d 890 (1986) (suit to enforce an arbitration award); *Sisco v. Consolidated Rail Corp.,* 732 F.2d 1188 (3d Cir.1984) (action for breach of the duty of fair representation under the Railway Labor Act). *See also Erkins v. United Steelworkers of America,* 723 F.2d 837 (11th Cir.) *cert. denied,* 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984) (applying six-month limitations period to breach of duty of fair representation claim not joined by a section 301 claim against employer).

In *Local Union 1397, United Steelworkers of America v. United Steelworkers of America,* 748 F.2d 180 (3d Cir.1984), we applied the six-month limitation period to an action brought under section 102 of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 412, by a local union and its officers against the International. The plaintiffs contended that the international union's imposition of disciplinary action against them violated their rights to, *inter alia,* due process, free expression, and freedom from retaliation protected by the LMDRA. The complaint alleged that the disciplinary action was motivated by disagreements between the Local and the International on such issues as the level of pollution allowable in plants, collective bargaining strategy, construction of new plants, arbitration policy and internal governance.

Applying the "family resemblance" analysis of *DelCostello*, we held that even though suit was brought under a different statute, the six-month section 10(b) limitation of the NLRA was the proper period rather than the six-year state limitation for interference with business relations because the claims of the Local and its officials against the International were all relevant to the international union's role as exclusive bargaining representative for its members, a role accorded it and governed by the NLRA. *Id.* at 183.

It is particularly significant to the issue before us in this case that in *Local 1397* we rejected the distinction plaintiffs sought to make between the "internal" concerns of the LMRDA and the "external" concerns of section 8(b) of the NLRA governing unfair labor practices. We stated: "[w]hether an individual's dispute with his union concerns an 'internal' matter, such as freedom to speak against union leadership, or an 'external' matter, such as the processing of grievances, every dispute implicates the responsibility that a union has for the economic welfare of its members." *Id.* We further concluded that the same federal interests in stable collective bargaining relationships and rapid resolution of labor disputes that led to adoption of the six-month period of section 10(b) of the NLRA are also present in suits by employees in vindication of their rights under the LMRDA because "dissension within a union naturally affects that union's activities and effectiveness in the collective bargaining arena." *Id.* at 184. *See also Davis v. United Automobile Workers of America,* 765 F.2d 1510 (11th Cir.1985), *cert. denied,* 475 U.S. 1057, 106 S.Ct. 1284, 89 L.Ed.2d 592 (1986) (applying section 10(b) limitations period to LMRDA claim); *but see Doty v. Sewall,* 784 F.2d 1 (1st Cir.1986) (holding section 10(b) inapplicable to LMRDA claim brought by union activist against two local unions).

We believe that the reasoning in *Local 1397* as well as the holding in *DelCostello* govern our decision in this case. Although Lewis asserts that his claim is for breach of a union constitution and that *DelCostello* is therefore inapplicable, the claim that

the Local failed to protect the rights of the members to vote on local supplements given them by the International's constitution is comparable to the claim in *Local 1397* that the International failed to protect the Local's officials' rights guaranteed by the LMDRA. If anything, the claim in this case is even closer to *DelCostello* than was the claim in *Local 1397* because the heart of Lewis' claim is his disagreement with Local 771's acceptance of the absentee policy. This implicates the adequacy of the Local's representation of the members' interests with respect to the policy and may directly affect the bargaining relationship with the employer.

The complaint asks the Court to "direct[ ] the Defendants to conduct a referendum by secret ballot ... to determine whether [the absentee] policy is to be ratified or rejected," App. at 9, which could, if granted, alter the terms of the bargaining agreement between Local 771 and Yellow Freight. Speedy resolution of disputes bearing on interpretations of the collective bargaining agreement was precisely the concern of the Court in rejecting state statutes of limitations as long as three years in *DelCostello,* 462 U.S. at 168–69, 103 S.Ct. at 2292–93. Applying the four-year Pennsylvania contract limitations period here could be similarly disruptive to " 'the entire relationship between company and union.' " *DelCostello,* 462 U.S. at 169, 103 S.Ct. at 2293 (quoting *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 64, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981)).

We do not decide whether, under other circumstances, the limitations period from another source might be more appropriate. *See DelCostello,* 462 U.S. at 171–72, 103 S.Ct. at 2294; *Adams v. Gould Inc.,* 739 F.2d 858, 866–67 (3d Cir.1984), *cert. denied,* 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985) (applying three-year ERISA statute of limitations to claim that employer breached contractual funding obligation under pension plan). We hold that in this case the district court correctly applied the six-month limitation period of section 10(b) to Lewis' claim.

## IV.

### Timeliness of Filing

[3] Although the district court correctly held that the six-month statute of section 10(b) was applicable to Lewis' claim, it concluded that under the then controlling Third Circuit precedent of *West v. Conrail,* 780 F.2d 361 (3d Cir.1985), the complaint must be both filed and served within the six-month period. The court apparently held that Lewis' complaint was untimely because it was filed but not served within six months. Subsequent to the district court's order in this case, *West v. Conrail* was reversed by the Supreme Court, which held that the section 10(b) statute of limitations does not bar an action as long as the complaint was filed within the limitations period. — U.S. ——, ——, 107 S.Ct. 1538, 1541–42, 95 L.Ed.2d 32 (1987). Defendants argue that Lewis' complaint was still untimely because it was not filed until March 10, 1986, more than six months after July 15, 1985 when Lewis and other members of Local 771 received the letter from Laukhuff stating that union members would not be allowed to vote. Local 771 and Laukhuff argue that this letter "outlined the unequivocal position of the Committee as of July 15, 1985" and that Lewis should have known of the futility of any grievance after that time. Appellees' Brief at 10.

Lewis, on the other hand, argues that the statute began to run on September 12, 1985 when his grievance was denied by the Central Pennsylvania Joint Area Grievance Committee. Lewis' amended complaint[3] alleges that Lewis then filed a grievance on August 5, 1985 after receiving Laukhuff's letter of July 15, 1985 informing the members that they would not be permitted to vote on the absentee policy put into effect earlier. Lewis' grievance stated in part:

This grievance is filed in protest of the road drivers attendance policy which I and other stewards signed with the understanding it was to be put into effect on June 8, 1985 for a sixty day trial period and was to be voted on and approved by the road drivers within the sixty day trial period.

App. at 26. The "Adjustment Requested" by the grievance was:

I ask this policy be renegotiated to meet federal and state laws, and be voted on, and approved by the road drivers before it becomes a road driver attendance policy.

App. at 27.

■ The district court made no express determination when Lewis' cause of action accrued. It is clear as a matter of law, however, and the defendants concede, that the statute of limitations does not begin to run while the union member undertakes to exhaust internal union appeal procedures. In *Scott v. Local 863, International Bhd. of Teamsters,* 725 F.2d 226, 229 (3d Cir. 1984), we stated that the statute of limitations did not begin to run in a section 301(a) suit until "the futility of further union appeals became apparent or should have become apparent." *See Adkins v. International Union of Electrical, Radio & Machine Workers,* 769 F.2d 330, 336 (6th Cir. 1985) (employee's good faith attempt to exhaust contractual remedies prevents accrual of the statute of limitations); *see also Hester v. International Union of Operating Eng'rs,* 818 F.2d 1537, 1545–48 (11th Cir.1987) (per curiam) (defining the union's final action which started the running of the limitations period as the point where the grievance procedure was exhausted or otherwise broke down to the employee's disadvantage).

Without deciding whether Lewis would have been required to exhaust the internal union procedures, *see Clayton v. International Union, United Automobile Workers of America,* 451 U.S. 679, 685–89, 101 S.Ct. 2088, 2093–95, 68 L.Ed.2d 538 (1981), we believe that when the plaintiff resorts to the internal union grievance procedures, the principles that warrant deference to completion of internal union procedures before starting the running of the statute of limitations in section 301(a) cases are equal-

---

3. The original complaint filed in state court did not contain any reference to Lewis' grievance, which was added in the amended complaint.

ly applicable in a suit such as this one brought under the union's constitution. The time for suit should not begin to run until "the futility of further appeals [becomes] apparent or should have become apparent."

■ Because this case reaches us on appeal from a dismissal of the complaint, there has been no determination by the district court of when the futility of further appeals should have become apparent. Although there is much to be said for Judge Becker's position in his concurring opinion in *Scott* that the statute of limitations should not begin to run until "the time that the employee has received from [the union] a clear, written statement telling him that further internal appeals are futile, and the time for judicial action has begun," 725 F.2d at 231, that was not the approach taken by the majority. Without a further record and findings by the district court, we do not know whether in this case there were the same types of earlier signals from the Union evincing its position as there were in *Scott*. Nor do we know, as Lewis argues, whether the July 15, 1985 letter from Laukhuff was the first time Union members were informed that they would not be permitted to vote on the absentee policy. These facts will be pertinent to the factual issues that the district court will have to resolve in determining the timeliness of the filing of the complaint. We assume that in resolving these issues, the district court will be cautious not to render nugatory the internal appeal procedure of the Union.

## V.

### Conclusion

For the foregoing reasons, the order of the district court of September 18, 1986 dismissing the first amended complaint will be reversed and the case remanded for further proceedings not inconsistent with this opinion.