828 F.2d 123
 126 L.R.R.M. (BNA) 2439, 107 Lab.Cas. P 10,162
 Rose GRASTY, Pat Poore, and Barbara Scullen, on behalf of
themselves and all others similarly situated, Appellants,
v.
AMALGAMATED CLOTHING AND TEXTILE WORKERS UNION, AFL-CIO,
CLC, Mid-Atlantic Regional Joint Board of Textile Workers
Union of America, Philadelphia Joint Board of Textile
Workers Union of America, and Carpet and Rug Workers of
Philadelphia and Vicinity, Local 80,
Amalgamated Clothing and Textile Workers Union, AFL-CIO,
CLC, Mid-Atlantic Regional Joint Board of Textile Workers
Union of America, and Philadelphia Joint Board of Textile
Workers Union of America, Appellees.
 No. 86-1642.
 United States Court of Appeals,
Third Circuit.
 Argued April 9, 1987.
Decided Aug. 31, 1987.
 
 Michael R. Needle (argued), Philadelphia, Pa., for appellants; Stephen C. Richman (argued), William T. Josem, Markowitz & Richman, Philadelphia, Pa., of counsel.
 Arthur Goldberg, Amalgamated Clothing and Textile Workers Union, New York City, Robert Tim Brown, Amalgamated Clothing and Textile Workers Union, Philadelphia, Pa., for appellees.
 Before SLOVITER, BECKER and GARTH, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 
 1
 This appeal involves an action by members of a local union against the regional joint board of the union and the international union claiming that defendants violated their respective constitutions and bylaws by failing to represent effectively the members of the Local in a number of respects, and that defendants violated their constitutions and bylaws and RICO, 18 U.S.C. Sec. 1962(c), by failing to rebate a share of dues to the local union and shop association and assessing dues from disabled workers. The local union was also named as a defendant originally, but plaintiffs have contended both here and in the district court that the Local was only a nominal defendant because its treasury was in the control of agents of the other defendants. It has since been dropped as a defendant. Plaintiffs also included in their complaint a claim under the Labor-Management Reporting and Disclosure Act, 29 U.S.C. Sec. 414 (LMRDA), and a pendent state law fraud claim.
 
 
 2
 The district court denied plaintiffs' motion for class certification and granted defendants summary judgment on plaintiffs' individual claims on the ground that under DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), those claims were barred by the six-month statute of limitations of section 10(b) of the National Labor Relations Act, 29 U.S.C. Sec. 160(b). This appeal followed.
 
 I.
 Facts
 
 3
 Appellants Rose Grasty, Pat Poore and Barbara Scullen, who are the named plaintiffs, are employees of Downs Carpet Company (Downs) and are members of a bargaining unit represented by Local Union 80 (Local 80), of the Amalgamated Clothing & Textile Workers Union (ACTWU). Appellee ACTWU is the international union and appellee Mid-Atlantic Regional Joint Board of Textile Workers Union of America (Joint Board) is the intermediate union with jurisdiction over Local 80.[1] (Unless otherwise noted, appellees are collectively referred to as "the Unions").
 
 
 4
 Plaintiffs allege that through a variety of actions or inactions, the Unions failed to fairly and faithfully represent them and other members of a class consisting of members of the bargaining unit. Their claims are based primarily upon the manner in which Jacqueline Lupo discharged her responsibilities as representative of the Joint Board to Local 80.
 
 
 5
 Plaintiffs allege that the Unions, acting through Lupo, broke a strike in February 1983 by fraudulently engineering the ratification of a bargaining agreement between Local 80 and Downs. According to the complaint, the agreement was rejected by a vote of 59 to 52 taken on February 15, 1983 which was tabulated by a committee of the members of the bargaining unit. Three days later, Lupo called the negotiation and election committees to a meeting and informed them that the ballots had been recounted and that the vote was 51 to 49 to accept Downs' proposal. Plaintiffs contend that "Lupo did not want to administer and conduct the strike and fabricated the 'recount' to that end." Appellant's Brief at 10.
 
 
 6
 Plaintiffs also allege that the Unions, again acting primarily through Lupo, allowed Local 80 to "fall into chaos" and failed and refused to conduct elections and other procedures to maintain Local 80 as a viable organization; that the Unions failed and refused to provide them and other members of the bargaining unit with effective representation in their day-to-day relationship with Downs by failing to handle worker grievances or disputes which occur on the second shift, by refusing to press grievances of terminated workers, and by refusing to protest when the company unilaterally doubled the deduction from employee wages for medical insurance from $.05 per hour to $.10 per hour; that the Unions collected excessive dues by assessing dues when bargaining unit members were disabled and not working and then causing Downs to deduct the extra dues from the members' wages when they returned to work; and that the Unions failed and refused to supply bargaining unit members with copies of the bargaining agreement and copies of their respective constitutions.
 
 
 7
 Finally, plaintiffs claim that the Unions failed for the five-year period prior to the filing of the complaint to rebate to the Downs shop association the $.25 per employee per month for its use as was required by their respective constitutions and bylaws. The complaint also alleges that the failure to rebate dues and the assessment of dues from employees who were disabled were part of a pattern of racketeering activity conducted in violation of RICO.
 
 
 8
 In a Memorandum Opinion and Order of May 30, 1986, the district court denied class certification on the ground that appellants Grasty and Poore cannot adequately represent the interests of the class since they were officers of Local 80, a defendant, during the relevant period. App. at 236-37. On June 2, 1986, the day scheduled for trial, the district court informed the parties that it would grant the Unions' motion for summary judgment in certain respects and deny it in others.[2] Plaintiffs then informed the district court that the remaining factual allegations of misconduct did not apply to their individual claims absent the possibility of class recovery. On July 31, 1986, the district court issued an order granting the Unions' motion for summary judgment. By Memorandum Opinion of August 9, 1986 the district court held that "all claims not waived by the individual plaintiffs, which the plaintiffs claim to have affected them personally, are barred by the statute of limitations." App. at 242.
 
 
 9
 On August 15, 1986 plaintiffs moved for reconsideration of the district court's order granting summary judgment. That motion was denied on September 12, 1986. Plaintiffs appeal from the district court's orders denying class certification, granting summary judgment in favor of the Unions, denying reconsideration of the order granting summary judgment, and various procedural orders.
 
 II.
 Jurisdiction
 
 10
 In this appeal, as in that recently decided in Lewis v. International Bhd. of Teamsters, 826 F.2d 1310, 1312-1315 (3rd Cir.1987), we are obliged to satisfy ourselves of our jurisdiction and that of the district court since federal subject matter jurisdiction over all the claims is not immediately apparent from the face of the complaint.[3] We cannot use the RICO count to support pendent jurisdiction over the remaining counts because the failure to rebate dues, the essence of the RICO claim, does not appear to be based on operative facts common to the other claims. For the same reason the LMRDA claim alleging failure to provide copies of the Unions' constitutions and the bargaining agreement will not support jurisdiction over the remaining counts. Accordingly, if we are to accept plaintiffs' counsel's vigorous assertion that he is not alleging that the Unions breached their duty of fair representation, in the face of what appears to us to be several such allegations in the complaint,[4] we are required to decide whether plaintiffs' claim of a violation of the Unions' constitutions evokes federal jurisdiction under section 301(a) of the Labor Management Relations Act.
 
 
 11
 Our decision in Lewis is controlling. In that case we held that jurisdiction exists under section 301(a) over a claim by an individual union member for breach of the international union's constitution. In this case, plaintiffs allege breach of the constitutions of the international union and the governing joint board. Accordingly, we conclude that, regardless of how the remaining claims are characterized, the district court had jurisdiction over them pursuant to section 301(a).[5]
 
 III.
 Class Certification
 
 12
 The principal issue before us on this appeal is whether the district court abused its discretion in denying certification of the class. Rule 23(a) of the Federal Rules of Civil Procedure permits one or more members of a class to sue on behalf of all members of the class "only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." The district court held that plaintiffs satisfied all but the last of these requirements. The district court concluded that the named plaintiffs cannot adequately represent the interests of the class because plaintiffs Grasty and Poore had held offices with Local 80 during the relevant period, and there was "potential for conflict with the proposed class." App. at 236-37.
 
 
 13
 Before deciding whether that conclusion can be sustained, we must consider the effect of the district court's failure to make any determination concerning the adequacy of Scullen, the third plaintiff, as a class representative. It is not necessary that all of the named representatives meet the Rule 23(a)(4) requirement. We agree with the courts that have held that in most cases as long as one of the representatives is adequate, the adequacy of representation requirement is met. See McCarther v. Camelot Inn of Little Rock, 513 F.Supp. 343, 345-47 (E.D.Ark.1980); Elliott v. Sperry Rand Corp., 79 F.R.D. 580, 584 (D.Minn.1978); see also, 7A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure Sec. 1765 at 277 (2d ed. 1986); 1 H. Newberg, Newberg on Class Actions Sec. 3.27 at 209-11 (2d ed. 1985) (one plaintiff satisfies adequacy of representation requirement).
 
 
 14
 Defendants did not suggest before us, and as far as we know did not argue in the district court, that Scullen was an inadequate representative. Thus, it was an abuse of discretion for the district court to have denied class certification without first making a determination as to whether Scullen was an adequate class representative, and we are required to remand in order that the district court may make such a determination.
 
 
 15
 Plaintiffs object to the district court's conclusion that Grasty and Poore do not meet the Rule 23(a)(4) requirement for class representatives. Since that issue may arise on remand, we will review that determination as well.
 
 
 16
 The district court correctly recognized that one of the two principal factors in determining the adequacy of representation is whether there is any potential conflict of interest between the named plaintiffs and the proposed class. See Goodman v. Lukens Steel Co., 777 F.2d 113, 123 (3d Cir.1985), aff'd on other grounds, --- U.S. ----, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); Scott v. University of Delaware, 601 F.2d 76, 85-88 (3d Cir.), cert. denied, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979). The district court, focusing upon the fact that Grasty and Poore held offices with Local 80 during the relevant period, concluded:
 
 
 17
 As officers of the very local the conduct of which is called into question, Grasty and Poore have a potential for conflict with the proposed class. Grasty and Poore could have an interest in foreclosing investigation into certain aspects of their conduct on behalf of Local 80 at least potentially indicative of the violations alleged in the complaint, or of the breach of fiduciary duty to the membership.
 
 
 18
 App. at 236.
 
 
 19
 In considering the ability of Poore and Grasty to represent the class, we examine first their positions at the dates in issue. Although there is some dispute as to whether Grasty, who was elected President of Local 80 in February 1986, succeeded to that office before that date from her position as Vice-President,[6] she was concededly an officer of Local 80 as well as Local 80's delegate to the Joint Board during part of the period the events complained about in this action took place. App. at 262. She apparently also was an Executive Board member of the Philadelphia Joint Board. App. at 407-08. See note 1, supra.
 
 
 20
 At her deposition, Grasty testified that she was a member of the Joint Board when a decision was made not to rebate dues to Local 80 for a period of time. App. at 385-86. Similarly, she was an officer of Local 80 at a time when plaintiffs claim the Local was "in chaos." We do not suggest that Grasty had complicity in the wrongful acts alleged or was responsible for them, but we cannot say that the district court abused its discretion in concluding that Grasty may have interests in conflict with those of the class.
 
 
 21
 Poore's position is different. Poore testified that prior to her election as Secretary-Treasurer of Local 80 in February 1986 she never held a position as an officer in Local 80, on the Joint Board, or any position with the International. App. at 439-40. Her only positions as an officer during the relevant time were as Vice-Chairman and as Secretary-Treasurer of the shop association. Since no allegations of misconduct by the shop association are made, her positions with the shop association would not create a conflict affecting her ability to represent the class.
 
 
 22
 Defendants argue that there is a conflict if Poore is a class representative suing Local 80 at the same time that she serves as one of its officers, which she now does. At the time the district court denied class certification, Local 80 was a defendant. Thereafter it granted plaintiffs' motion to dismiss Local 80 as a defendant. App. at 239. Since we are remanding so that the district court can consider whether Scullen is an adequate representative, it will also be free to consider whether the deletion of Local 80 as a defendant affects Poore's ability to serve as a class representative.
 
 
 23
 The other significant factor in the adequacy of representation determination is, as the district court stated, "an assurance of vigorous prosecution." App. at 235. See, e.g., Sosna v. Iowa, 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975); Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir.1978). This ordinarily is equated with the competence and experience of class counsel. See, e.g., General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982); Pennsylvania Dental Ass'n v. Medical Serv. Ass'n, 745 F.2d 248, 263 (3d Cir.1984), cert. denied, 471 U.S. 1016, 105 S.Ct. 2061, 85 L.Ed.2d 303 (1985). "Vigorous prosecution" must be measured in terms of the efficiency and legal acuity of the class representative rather than the number or length of papers filed. In slang parlance, what is needed is light rather than heat.
 
 
 24
 The district court stated that it had "considerable doubt about [plaintiffs' counsel's] ability to prosecute this action on behalf of the class." App. at 237. However, it made no finding that counsel cannot effectively represent the interests of the class. The bases given for the district court's "doubt" were the choice of the three named plaintiffs and counsel's failure to respond timely to the motion for summary judgment. Our decision that at least one of the named plaintiffs does not appear to have been an inappropriate choice as class representative undercuts the district court's reliance on that consideration as a basis for a determination that counsel was inadequate. We are not in a position, in the absence of a specific finding by the district court of inadequacy of counsel, to decide whether counsel's failure to file a timely response to the motion for summary judgment could support such a finding. We do not preclude the district court from evaluating counsel's performance as part of its determination on remand as to whether plaintiffs can adequately represent the class.[7] However, we would hesitate to construe Rule 23 to preclude maintenance of a valid claim as a class action based on counsel's inadequacy, if such a finding were made, if other experienced class counsel could be attracted to associate as co-counsel and bolster the class' representation.
 
 
 25
 The Unions argue that we can affirm the district court's order denying class certification on the ground that the named representatives' claims are not typical of the claims of the class. The typicality requirement of Rule 23(a)(3) "permits the court to assess whether the class representatives themselves present those common issues of law and fact that justify class treatment." Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir.), cert. denied, 474 U.S. 946, 106 S.Ct. 342, 343, 88 L.Ed.2d 290 (1985). In determining whether the named representatives' claims are typical, a court must "inquir[e] whether 'the named plaintiffs' individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.' " Id. (quoting Weiss v. York Hosp., 745 F.2d 786, 809 n. 36 (3d Cir.1984), cert. denied, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985)).
 
 The district court concluded:
 
 26
 The putative class in the case before me suffered some damages which the named plaintiffs did not, as a result of a course of conduct which affected both the named plaintiffs and the class and affords both of them common legal bases for relief. Therefore, the named plaintiffs have established typicality as required by Rule 23(a)(3).
 
 
 27
 App. at 235.
 
 
 28
 The Unions argue that General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), requires us to find that the typicality requirement of Rule 23(a) was not met. We agree with the district court that Falcon is not controlling in this case. In Falcon, the Supreme Court rejected the Fifth Circuit's "across-the board" doctrine under which racial discrimination is by definition class discrimination. On the basis of that doctrine, the district court, without making the specific findings required under Rule 23(a), permitted a Mexican-American who had not been promoted to represent a class of Mexican-Americans who had not been hired. The Court held that "it was error for the District Court to presume that respondent's claim was typical of other claims against [the company] by Mexican-American employees and applicants." Id. at 158-59, 102 S.Ct. at 2371 (emphasis added).
 
 
 29
 The Court did not hold in Falcon that any factual difference between the claims of the named plaintiffs and the claims of other members of the class defeats typicality. As one of the leading commentators has stated, "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." 1 H. Newberg, Newberg on Class Actions Sec. 3.15 at 168 (2d ed. 1985).
 
 
 30
 In Goodman v. Lukens Steel Co., 777 F.2d 113, 123 (3d Cir.1985), aff'd on other grounds, --- U.S. ----, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), a case decided after Falcon, we held that the claims of plaintiffs that racial bias occurring after their probationary period had ended led to their discharge were sufficiently typical of the claims of class members of racial bias during their probationary period to satisfy Rule 23(a). We specifically rejected the contention that the typicality requirement was not met because "in a number of areas the class representatives' specific allegations are distinct from those of the class as a whole." Id. Although the named plaintiffs in this case do not share all of the claims of the class, since the various claims alleged appear to stem from a single course of conduct by which the Unions allegedly failed to represent their members fairly and effectively, we cannot conclude that the district court abused its discretion in holding that the typicality requirement was met.[8] The case will be remanded for further proceedings on the adequacy of representation issue.[9]IV.
 
 Statute of Limitations
 
 31
 The district court granted summary judgment on all claims which were not "waived" by the individual plaintiffs on the ground that they were time barred. Plaintiffs contend that the district court erred in holding that the six-month statute of limitations of section 10(b) of the NLRA, 29 U.S.C. Sec. 160(b) is the limitations period applicable to their claims. They argue that because their claims are for breach of the Unions' obligations under their respective constitutions[10], the Pennsylvania four-year statute of limitations for breach of contract, 42 Pa.Cons.Stat.Ann. Sec. 5525(8) (Supp.1987), rather than section 10(b) of the NLRA is the applicable limitations period. It appears that plaintiffs' counsel repudiated the allegations of a breach of the duty of fair representation made in the complaint in the attempt to take advantage of what he assumed would be the longer statute of limitations applicable to claims of violation of the Unions' constitutions.
 
 
 32
 We recently held in Lewis v. International Bhd. of Teamsters, 826 F.2d 1310, 1317-18 (3rd Cir.1987), that the six-month limitations period of section 10(b) was applicable to a section 301 claim that a local union's failure to conduct a secret ballot vote on a supplemental agreement with the employer was a violation of the international union's constitution. We based our holding on the analysis applied in DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), where the Court held that the "family resemblance" between an unfair labor practice charge under the NLRA and a breach of the duty of fair representation claim brought by an employee against a union required application of the six-month limitations period of section 10(b) to "hybrid" section 301 suits against the employer for breach of the collective bargaining agreement and the union for breach of the duty of fair representation. We concluded that Lewis' claim bore a similar "family resemblance" to an unfair labor practice. Id. at 1318; see also Local Union 1397, United Steelworkers of America v. United Steelworkers of America, 748 F.2d 180, 183 (3d Cir.1984). We also found it significant that Lewis' action, if successful, could alter the terms of the bargaining agreement and therefore application of the four-year state limitations period for breach of contracts would impinge upon the policy of speedy resolution of labor disputes. Lewis, 826 F.2d at 1318; see also DelCostello, 462 U.S. at 168-69, 103 S.Ct. at 2292-93.
 
 
 33
 The same concerns lead us to conclude that the six-month statute of limitations is applicable to most of plaintiffs' allegations of breaches of the Unions' constitutions. The material allegations in support of these claims are that the Unions fraudulently engineered the strike vote; that the Unions failed to pursue grievances of second-shift employees and terminated workers; that they failed to protest an increase in medical deductions by Downs; and that the Unions allowed Local 80 to "fall into chaos" and failed to conduct elections. App. at 10-11. Each of these claims implicates the policy considerations that led the Court to adopt the six-month limitations period in DelCostello because they are related to the Unions' role as exclusive bargaining representatives for Local 80's members. While plaintiffs may choose to characterize these claims as arising from a breach of the Unions' constitutions, the acts on which the claims are based are not dissimilar, indeed are identical, to acts which would support a claim for violation of the Unions' duty of fair representation. The latter would be subject to a six-month statute of limitations. It would be anomalous were we to conclude that a claim for essentially the same acts was governed by two different limitations periods depending on the name the party chooses to give the claim. See Erkins v. United Steelworkers of America, 723 F.2d 837, 840 (11th Cir.), cert. denied, 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984).
 
 
 34
 The rationale for applying a six-month statute of limitations to, for example, the claim based on fraudulent ratification of the strike vote is evident since a longer period could be disruptive to the entire relationship between the company and the union. Lewis, 826 F.2d at 1318; see also DelCostello, 462 U.S. at 169, 103 S.Ct. at 2293. Thus, we agree with the district court that the six-month limitations period of section 10(b) is applicable to Count I of the complaint.
 
 
 35
 The district court did not reach the issue of the statute of limitations applicable to the claims in Count II that the Unions improperly double-deducted dues when disabled employees returned to work and that the Unions failed to rebate the $.25 per employee allocable to the shop association.[11] The district court treated those claims as "waived". They were "waived" only to the extent that the individual plaintiffs informed the court after denial of class certification that they could not in good faith prosecute those claims on an individual basis because they were claims accruing to the entire class. Since we are remanding for reconsideration of the class certification, we must consider which statute of limitations is applicable to those Count II claims.
 
 
 36
 In Lewis, we suggested that the limitations period from a source other than section 10(b) might be more appropriate to some claims of a breach of a union constitution. Lewis, 826 F.2d at 1318 (citing DelCostello, 462 U.S. at 171-72, 103 S.Ct. at 2294); see also International Union, United Automobile Workers of America v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) (applying six-year state contracts statute of limitations to claim by union brought on behalf of employees against employer for failure to pay vacation pay due employees under collective bargaining agreement). Where there is little similarity between a breach of union constitution claim and an unfair labor practice claim, there is no basis for borrowing section 10(b) as the applicable statute of limitations. We must consider therefore whether plaintiffs' claims of double dues deduction and failure to rebate to the shop association warrant application of the longer Pennsylvania breach of contract limitations period.
 
 
 37
 In Adams v. Gould Inc., 739 F.2d 858 (3d Cir.1984), cert. denied, 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985), we were required to decide which statute of limitations to apply in an action by former employees against their employer for underfunding their pension trust, an underfunding that arose from a settlement between the employer and the union in implementing an arbitration award. We held that the three-year limitations period of 29 U.S.C. Sec. 1113(a)(2) for ERISA violations was the appropriate limitations period rather than the six-month section 10(b) period. We distinguished the concerns in that case from those in the ordinary breach of duty of fair representation case in which speed and finality in the resolution of disputes are critical because the issue is normally intertwined with the day-to-day relationship between management and labor. We stated:
 
 
 38
 In [a] pension dispute ... that policy is less relevant. Even where the litigated dispute involves the funding of a pension plan involving an entity that remains in business, rather than an entity which ceases operation ..., the immediate effect of the dispute on the day-to-day labor-management relationship is slight.
 
 
 39
 739 F.2d at 867.
 
 
 40
 The claims in this case that the Unions violated their constitutions by the double dues deduction and failure to rebate dues to the shop association have little or no relation to the day-to-day relationship between Local 80 and its members, on one hand, and Downs, on the other. The need for speedy resolution of the dispute is therefore not present. Accordingly, we hold that the statute of limitations applicable to Count II is the four-year Pennsylvania statute for breach of contract.
 
 
 41
 The double deduction of dues and rebate claims set forth in Count II as a violation of the Unions' constitutions also form the basis of the RICO claim asserted in Count IV. The RICO claim is also covered by a four-year statute of limitations, Agency Holding Corp. v. Malley-Duff & Assocs., Inc., --- U.S. ----, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987).
 
 
 42
 The district court also apparently treated as waived plaintiffs' LMRDA claim in Count III that the Unions failed and refused to provide members of the class with copies of the bargaining agreement and the Unions' respective constitutions. The reasoning that we used in Local 1397, United Steelworkers of America, 748 F.2d at 183, to apply a six-month statute of limitations to the LMRDA claim asserted there is applicable as well here.
 
 V.
 Tolling
 
 43
 In applying the six-month statute of limitations, the district court concluded that all of the remaining claims of the individuals were time barred.[12] Plaintiffs contend that the district court erred by failing to determine whether their attempts to exhaust internal union remedies tolled the running of the statute.
 
 
 44
 In Scott v. Local 863, International Bhd. of Teamsters, 725 F.2d 226, 229 (3d Cir.1984), we held that the statute of limitations does not begin to run in a section 301(a) suit until "the futility of further union appeals became apparent or should have become apparent." See also Lewis, 826 F.2d at 1318. This requires a claim-by-claim determination.
 
 
 45
 Plaintiffs argue that they and other members of the proposed class made numerous efforts through letters, telephone calls and petitions to complain about their grievances to the Joint Board. Bruce Dunton, the Regional Director of the Joint Board, acknowledged receipt of complaints about at least some of the matters that are the subject of this suit. Dunton also testified concerning a letter and petition dated April 10, 1985 signed by members of the Downs' shop association seeking an audit of Local 80's books and payment of the rebates. App. at 577-79; see also App. at 763-64.
 
 
 46
 There is ample evidence that plaintiffs were making an ongoing effort to resolve Local 80's problems internally. We cannot decide as a matter of law when, if ever, it should have become apparent that further efforts would have been futile. Plaintiffs assert that the class sought and received the Unions' assurances that the conduct complained of would be rectified as late as five months prior to the filing of the complaint on October 2, 1985. On remand, the district court will have to consider which, if any, of the claims covered by the six-month statute of limitations were tolled by efforts at internal resolution. The district court should consider whether plaintiffs' informal complaints are to be treated as comparable to utilization of an existing mechanism for complaining about union actions. The district court will also have the opportunity to consider whether the tolling issue is affected by its determination of the class certification issue.[13]
 
 VI.
 Conclusion
 
 47
 For the foregoing reasons, we will vacate the district court's order denying class certification and remand for further proceedings consistent with this opinion. Costs on appeal are to be divided equally between appellants and appellees.
 
 
 
 [1]
 The complaint also named the Philadelphia Joint Board of Textile Workers Union of America as a defendant. It was averred in the answer of the Mid-Atlantic Regional Joint Board and Local 80 that the Philadelphia Joint Board no longer exists as an entity. App. at 18. This averment was apparently not challenged by appellants and the district court treated only the Mid-Atlantic Regional Joint Board as a defendant. See App. at 230. The Philadelphia Joint Board was apparently merged into the Mid-Atlantic Regional Joint Board. We refer to both the Philadelphia Joint Board and the Mid-Atlantic Regional Joint Board as the "Joint Board."
 
 
 [2]
 It is unclear from the record before us on which claims summary judgment would have been denied or granted. It appears from the district court's opinion that summary judgment was originally granted on Count I, the Count asserting that defendants breached their duty of fair representation arising from the union constitutions. Counts II through V pertained to the double deduction of dues and failure to rebate claims, and the LMRDA, RICO and common law fraud claims
 
 
 [3]
 By letter dated April 3, 1987, this court requested counsel to be prepared to address "the question of whether federal subject matter jurisdiction exists where individual members of the union have sued their union for breach of the union constitution." Post-argument memoranda addressing the issue were filed
 
 
 [4]
 On its face, the complaint raises allegations of breach of the duty of fair representation. For example, para. 11(B) lists as one of the issues of fact and law common to the class "[w]hether said conduct was in breach of a duty of fair representation incumbent upon defendants pursuant to the Agreement, preceding collective bargaining agreements, and defendants' respective constitutions and bylaws," App. at 8, and para. 27 states, "At all times relevant hereto, each defendant owed plaintiffs and each member of the class a duty of fair representation pursuant to the Agreement." App. at 13. Of course, plaintiffs are free to drop allegations of their complaint and plaintiffs' counsel may have receded from these allegations in the belief that it would inure to plaintiffs' advantage in responding to the statute of limitations defense. As we point out in the text, infra, that argument is unavailing
 
 
 [5]
 In light of our acceptance arguendo of plaintiffs' view that the complaint does not include a breach of a duty of fair representation claim, we need not consider whether such a claim may be pursued independent of a claim against the employer alleging violation of the collective bargaining agreement. That issue is now before this court in banc in Bygott v. Leaseway Transp. Co., Nos. 86-1027 and 86-1456, pursuant to an Order dated July 27, 1987 signed by Chief Judge Gibbons vacating the panel opinion and the judgment thereon and listing the case for rehearing before the court in banc
 
 
 [6]
 The prior President apparently resigned during the period Grasty was Vice-President. App. at 263. Art. VIII, Sec. 4 of the ACTWU constitution provides that the Vice-President succeeds to the office of President if the President resigns. App. at 637
 
 
 [7]
 In making this evaluation, the district court may consider counsel's performance on appeal as reflected in this opinion
 
 
 [8]
 The Unions argue that the named plaintiffs do not have standing to raise the claims of the class. Appellees' Brief at 44-46. They confuse standing and the typicality requirement of Rule 23(a)(3). Each of the named plaintiffs has presented claims of injury to herself and has alleged facts which present a case or controversy. See Goodman v. Lukens Steel Co., 777 F.2d at 122
 
 
 [9]
 On remand it will be necessary for the district court to determine whether the named plaintiffs' claims "exist[ed] during the applicable limitations period" and whether the possibility of intervention by other qualified class representatives would be appropriate. See Goodman v. Lukens Steel Co., 777 F.2d at 124
 
 
 [10]
 Plaintiffs point to several provisions of the Unions' constitutions in support of their contention that the Unions' actions are properly characterized as a breach of the Unions' constitutions. They argue that Art. VII, Sec. 1 of the ACTWU constitution provides that "the membership shall be organized into local unions and/or joint boards," that the members of every local are required to delegate the exercise of their rights under section 7 of the NLRA, 29 U.S.C. Sec. 157 and Art. VII Sec. 4 of the ACTWU constitution to the Joint Board, that the Joint Board had the sole authority to execute collective bargaining agreements with Downs under Art. VI, Sec. 3 of the Joint Board's constitution, that under Art. VI, Sec. 4 of the Joint Board's constitution only the Joint Board can call or conduct a strike, that under Art. III, Sec. 8 of Local 80's constitution and Art. VII, Sec. 3(a) of the ACTWU constitution the Joint Board was obligated to organize Local 80, and that the financing of ACTWU, the Joint Board and Local 80 required dues rebates of $.15 and $.25 per month to Local 80 and the shop association respectively
 
 
 [11]
 The complaint alleges a failure to rebate dues to Local 80 as well. The briefs in this court focus only on the failure to rebate to the shop association. Because we are remanding this case to the district court, the district court will be in a position to clarify the relationship between Local 80 and the shop association and to rule on whether the claim for failure to rebate may be maintained by these plaintiffs without joining Local 80 or the shop association as plaintiffs
 
 
 [12]
 For example, it held that the claim concerning the strike was time barred because the strike occurred two and one-half years before the action was brought and that the claim with respect to processing grievances of second-shift employees was barred because Grasty, the only second-shift employee among the named plaintiffs, had not filed a grievance within six months of filing the complaint. App. at 246-47
 
 
 [13]
 In light of our disposition, we do not reach plaintiffs' claim that the district court was arbitrary, unreasonable and prejudicial in its scheduling and case management, particularly in the order denying the motion for enlargement of time and setting the pretrial schedule