

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-22-2003

# Lundy v. Hochberg

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-1343

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Lundy v. Hochberg" (2003). *2003 Decisions.* Paper 193.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/193

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 02-1343,  02-2041; 02-3678; 02-2053; 02-3732; 02-3845

———

MARVIN LUNDY

v.

ROBERT HOCHBERG;
JOHN HAYMOND;
JOHN HAYMOND, P.C.
t/a HAYMOND & LUNDY;
SCOTT E. DIAMOND;
HAYMOND, NAPOLI, DIAMOND, P.C.

Marvin Lundy, Appellant in Nos. 02-2053, 02-3732 & 02-3845
Robert Hochberg, Appellant in Nos. 02-1343, 02-2041 & 02-3678

———

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 99-cv-05048)
District Judge:  The Honorable Norma L. Shapiro

———

Submitted Under Third Circuit LAR 34.1(a)
September 16, 2003

Before:  MCKEE, SMITH, and COWEN, *Circuit Judges*

(Filed:  October 22, 2003)

———

SMITH, *Circuit Judge*.

Before us are just some of the bitter fruits of a legal partnership gone awry. Appellee/cross-appellant Marvin Lundy filed in the District Court state law claims for prospective injunctive relief against his former law partners Robert Hochberg, John Haymond, and Scott Diamond for the unauthorized practice of law and "conspiracy" to "aid and abet" the unauthorized practice of law. Hochberg appeals from the grant of a judgment and permanent injunction against him, while Lundy cross-appeals from the District Court's dismissal of his "conspiracy" and "aid and abetting" claims relating to the same against Haymond and Diamond. Because Lundy is without standing to pursue these state law claims in an Article III court, we will vacate the orders of the District Court and remand with instructions to dismiss these claims.[1]

## I.

In October 1997, appellant Robert Hochberg and his then-partner John Haymond, personal injury attorneys both then licensed and practicing in Connecticut, formed a new legal partnership in Pennsylvania with appellee/cross-appellant Marvin Lundy. Mr.

---

[1] All of the appeals set forth in the caption relate to the unauthorized practice of law claim. The second and third issues appealed in case number 02-3845, together with the appeals in case numbers 00-1969 and 02-3781, are unrelated to the unauthorized practice of law claim and are disposed of in a separate decision filed this same date.

Lundy, then already possessing a personal injury practice of his own in Philadelphia, joined with Messrs. Hochberg and Haymond because of their experience and expertise in generating legal business through television and other advertising techniques. The resulting partnership, Haymond & Lundy ("H&L"), lasted two years.

Around October 1999, Lundy claims to have learned that Hochberg had previously pled guilty to a federal count of conspiracy to commit bank fraud, had been disbarred in Massachusetts and suspended in Connecticut as a result, and was therefore practicing law in Pennsylvania without a license. Lundy Second Stage Br. at 3. Lundy asserts that, as a result, he declared his partnership with Haymond and Hochberg dissolved on October 9.[2] The former partners filed crossing complaints in the Eastern District of Pennsylvania, alleging assorted federal and state law claims against the other.[3] Lundy alleged, *inter alia*, that Haymond, Hochberg, and Diamond – who was previously associated with Lundy, but left to practice with Haymond and Hochberg when H&L was dissolved –

___

[2] The record belies Lundy's present assertions of ignorance regarding Hochberg's criminal conviction and licensure status. The District Court expressly found, based on testimony given by Lundy at trial, that Lundy was informed of Hochberg's indictment when Lundy, Haymond, and Hochberg were negotiating to form H&L in April 1997, and that Lundy and his attorney, negotiating the merger through an arms-length transaction, knew or should have known about the subsequent plea, sentencing, and licensure proceedings. Hochberg's August 4, 1997 guilty plea well preceded the final formation of H&L that October.

[3] When the parties initially brought their assorted claims below, Hochberg and Haymond had continued as partners and were allied against Lundy. Hochberg and Haymond have since also gone their separate ways and have, not surprisingly, also chosen to resolve the differences existing between them through litigation.

3

committed a civil RICO violation by conspiring to defraud Lundy of his law firm and clients, and therefore sought various damages and compensation. Lundy also brought state law claims pursuant to a Pennsylvania statute authorizing civil actions for prospective injunctive relief to prevent the unauthorized practice of law by non-lawyers.

Although all the federal question claims dropped out of the litigation over time, both Hochberg and Haymond's supplemental state law breach of contract claim against Lundy and Lundy's unauthorized practice of law claim against Hochberg eventually went to trial. The District Court tried the breach of contract claim first, resulting in a verdict of liability in favor of Haymond against Lundy for breach of the partnership agreement on January 26, 2001. On February 21, 2001, the bench trial commenced on Lundy's unauthorized practice of law claim against Hochberg. This resulted in a judgment against Hochberg on August 31, 2001, and a permanent injunction prohibiting him from practicing law in Pennsylvania unless and until he obtained admission to the Pennsylvania Bar either in full or *pro hac vice*.[4] Nonetheless, out of deference to the Pennsylvania courts, the District Court had earlier abstained from involving itself in the question of whether Haymond, a licensed practitioner, could be held liable for "conspiracy" to "aid and abet" Hochberg's unauthorized practice of law and dismissed that novel claim. The

---

[4] The Connecticut Bar reinstated Hochberg's license to practice law in that state in November of 2001. Nonetheless, under the terms of the District Court's injunction, Hochberg appears to be prohibited from undertaking any actions at a law firm in Pennsylvania that may be construed as "practicing law" until he is also licensed in Pennsylvania.

4

parties appealed these respective judgments and, consistent with what the District Court found to be the "consistently overlitigated"and "vexatious" nature of this dispute, also dispute the amount of attorneys' fees subsequently awarded by the District Court.

The District Court premised its jurisdiction on 28 U.S.C. § 1331 and § 1367. We have jurisdiction over these appeals pursuant to 28 U.S.C. § 1291. On appeal, Hochberg asserts, *inter alia*, that pursuant to our decision in *Lyon v. Whisman*, 45 F.3d 758 (3d Cir. 1995), and the principles relating to supplemental jurisdiction stated by the Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), the District Court never properly possessed subject-matter jurisdiction over the state unauthorized practice of law claims because they did not sufficiently "derive from a common nucleus of operative fact" as the federal questions so as to permit the District Court to exercise supplemental jurisdiction over those claims in the first instance.[5] Lundy responds that supplemental jurisdiction was appropriate, and that the District Court inappropriately abstained from considering whether "the Pennsylvania Constitution would be violated were the [District] Court to entertain jurisdiction over Pennsylvania Bar members."

## II.

Before addressing the merits of the parties' allegations in this appeal, we must

---

[5] In the event that the District Court's supplemental jurisdiction were upheld, Hochberg also asserted that the District Court abused its discretion in continuing to maintain that jurisdiction once all the federal claims were dismissed. *See*, *e.g.*, *Annulli v. Panikkar*, 200 F.3d 189 (3d Cir. 1999), *abrogation on other grounds recognized by Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000).

satisfy ourselves that it was appropriate for an Article III court to consider the state law claims brought by Lundy. While neither party raised the issue of whether Lundy possessed Article III standing to bring his claims, "every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts, in every appeal presented to it, regardless of whether the parties contest jurisdiction." *Lewis v. Int'l Broth. of Teamsters*, 826 F.2d 1310 (3d Cir. 1987) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534 (1986) (internal quotations omitted)). *See also Lyon*, 45 F.3d at 760 (vacating a district court judgment for lack of jurisdiction even after a trial on the merits); *Trent Realty Assoc. v. First Fed. Sav. & Loans Assoc.*, 657 F.2d 29, 36-37 (3d Cir. 1981) (vacating a district court order, though "cognizant that some frustration is inevitable by a holding on appeal that a matter which has proceeded to judgment for one of the parties must be remanded" for lack of federal jurisdiction).

The Supreme Court succinctly summarized the now familiar elements a plaintiff must demonstrate to establish Article III standing in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992):

> First, the plaintiff must have suffered an "injury in fact"--an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of-- the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be 'redressed by a favorable decision.'"

*Id.* at 560-61 (citations omitted). At all times, "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. "[A]t the final stage, those facts (if controverted) must be 'supported adequately by the evidence adduced at trial.'" *Id.* (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 115 n.31 (1979)). Because the parties did not brief the issue of whether Lundy had successfully proven these elements, we requested supplemental briefing from the parties on this issue. *See Lunderstadt v. Colafella*, 885 F.2d 66, 69 (3d Cir. 1989).

Hochberg argues that Lundy lacks Article III standing because Lundy: [1] seeks redress for past wrongs that are not "accompanied by present adverse effects"; [2] did not demonstrate his alleged injury is causally related to the claim of unauthorized practice of law; and [3] a favorable decision enjoining Hochberg from practicing law could not alleviate any present threat of injury to Lundy. Lundy responds that he sustained the following injuries that he contends would be redressed through his unauthorized practice of law claim: [1] "that Hochberg's acts and omissions 'placed the clients of the law firm at risk, and created both ethical and financial risks to all lawyers and others at [H&L]"; [2] that Hochberg and his present firm still retain cases belonging to Lundy and are denying him the fees associated with those cases; and [3] because several cases retained by Hochberg stem from a time when Lundy was partners with Hochberg, Lundy "is thereby responsible for each and every claim which may be made against him in connection with Hochberg practicing law without a license, and while disbarred and

suspended." Thus, Lundy asserts he "has been damaged and remains at risk as a result of Haymond's foisting off Hochberg on Lundy as Managing Partner of Haymond & Lundy, LLP" from October 1997 to October 1999.

### III.

The question of a plaintiff's Article III standing to bring a claim must be considered in light of the specific allegations that a plaintiff has brought and the relief sought. *See*, *e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976). Lundy brought his unauthorized practice of law claims pursuant to a Pennsylvania statute criminalizing the unauthorized practice of law by any person who "convey[s] the impression that he is a practitioner of the law of any jurisdiction" in Pennsylvania. 42 Pa. C.S.A. § 2524(a). This statute also permits an individual to bring a civil claim against such an "unauthorized practi[tioner]," but solely for the benefit of prospective injunctive relief. *See* § 2524(c).[6]

Lundy asserts that he is a "person contemplated by the framers of [§ 2524] who would vindicate the public policy because of his personal injury." Had Lundy brought these claims in Pennsylvania's courts, which are not bound by the constitutional

---

[6] "Injunction.– In addition to criminal prosecution, unauthorized practice of law may be enjoined in any county court of common pleas having personal jurisdiction over the defendant. The party obtaining such an injunction may be awarded costs and expenses incurred, including reasonable attorney fees, against the enjoined party." 42 Pa. C.S.A. § 2524(c).

requirements of Article III, perhaps that would be enough. Nonetheless, having elected to litigate this claim in the federal courts, Lundy must prove he has presented a sufficiently concrete case or controversy to meet the jurisdictional requirements of Article III before he can proceed. *See* U.S. Const. art. III, § 2.[7]

Generally, a "plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury'" to demonstrate standing. *Lyons*, 461 U.S. at 101-02. But where the claim at issue is one for injunctive relief, "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *Id.* at 103. Thus, Lundy's "standing to seek the injunction requested" in federal court "depended on whether he was likely to suffer future injury from" Hochberg's continued unauthorized practice of law. *Id.* at 105.

Lundy's assertions that Hochberg's unauthorized practice while a partner at H&L "placed" him at risk and caused other past injuries obviously fail to amount to an injury that can be redressed by an injunction against Hochberg's present and future unauthorized practice of law. *Lyons*, 461 U.S. at 105 ("injunction requested depended on whether he

---

[7] Because Lundy's purported claims for injunctive relief against Haymond and Diamond for "conspiracy" to "aid and abet" the unauthorized practice of law derive from and are premised upon Lundy's direct claim against Hochberg, we see no need to analyze them separately and we decline to do so. If Lundy lacks Article III standing to bring the underlying claim against Hochberg, *a fortiori*, he is without standing to bring the derivative claims. Furthermore, as Haymond has now separated from and is in litigation with Diamond and Hochberg regarding the subsequent breakup of their practice, any claim that Lundy had against Haymond to enjoin his "aiding and abetting" of Hochberg's unauthorized practice of law appears moot.

9

was likely to suffer future injury"). Lundy is no longer in partnership with Hochberg and, we feel we can safely conclude from the record, will not be again. Nonetheless, Lundy's assertions that he is both being denied attorney fees as a result of Hochberg's continued unauthorized practice of law and that Lundy is "responsible for each and every claim which may be made against him in connection with Hochberg's practicing law without a license" attempt to allege present and future harm. We consider these arguments in turn.

First, Lundy asserts that Hochberg's continued practicing of law presently and prospectively denies him of revenues and fees that might otherwise go to him. Of course, the same could be said by just about any other lawyer who does not presently have Hochberg's firm's clients as his own. Thus, we doubt that this allegation of harm is anything more than a "generalized grievance" that Lundy shares with every other lawyer practicing in Pennsylvania. *See Lujan*, 504 U.S. at 575. Lundy seems "no more entitled to an injunction than any other citizen" or attorney and without a sufficiently particularized injury. *Lyons*, 461 U.S. at 111.

Nonetheless, even if we assume "that the injury . . . affect[s] the plaintiff [Lundy] in a personal and individual way," *Lujan*, 504 U.S. at 560 n.1., "the 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Eastern Kentucky Welfare Rights Organization*, 426 U.S. at 41-42. Neither Lundy's complaint, the trial

record, nor the District Court's ultimate findings of fact and conclusions of law suggest that, but for Hochberg's unauthorized practicing of law, Lundy's former clients would leave Hochberg's present law firm and return to Lundy. Thus, Hochberg's continuing practice is not causing Lundy's "injury." Rather, the record indicates that Lundy's "injury" resulted from "the independent action of some third party not before the court," *id.*, specifically his former clients' decisions to take their business elsewhere. Certainly, the record suggests that Hochberg engaged in the unauthorized practice of law because his "decisions on behalf of [the] law firm" could "require legal judgment." Nonetheless, it also shows that Hochberg was not primarily a practitioner, but mostly a firm manager and administrator. There is only sparse evidence of client contact by Hochberg, and none of it suggests that Hochberg was the primary point of contact or "draw" for any of those clients. Thus, nothing suggests that any "particularized" injuries Lundy contends he was suffering could be "redressed by a favorable decision" banning Hochberg from legal practice. *Lujan*, 504 U.S. at 560-61.

This is not to suggest that neither Hochberg nor Haymond committed no wrongs that could be actionable in initially inducing Lundy's clients to abandon him. We express no opinion on that question here; before us is whether Lundy was suffering a continuing injury that was "fairly traceable" specifically to Hochberg's conduct of practicing law without a license and, therefore, "likely, as opposed to merely speculative, that the injury [would] be redressed by a favorable decision" and prospective injunction. *Lujan*, 504

U.S. 560-61 (quotations and alterations omitted). Whether Lundy had standing to bring an action for damages stemming from past frauds or misrepresentations purportedly made by Hochberg or Haymond to Lundy's former clients is a separate issue. Because, however, the record below does not reflect that Lundy's purported loss of clients and fees was caused by, was likely to be redressed by, or (with the benefit of the hindsight now possessed) in any way even was redressed by an injunction against Hochberg from the District Court pursuant to § 2524(c), that allegation of injury cannot form the basis for the Article III standing which Lundy must show to bring his claims.

Lundy's letter brief now also asserts that he will be "responsible for each and every claim which *may* be made against him in connection with Hochberg practicing law without a license." Lundy Letter Br. at 5 (emphasis added). Unlike Lundy's previous allegation, this alleged injury seems sufficient to "demonstrate a 'personal stake in the outcome'" to justify Article III standing. *Lyons*, 461 U.S. at 101 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). Nonetheless, an "injury in fact" must not only be "concrete and particularized," but also "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560. Stated another way, the plaintiff must be "immediately in danger of sustaining some direct injury." *Lyons*, 461 U.S. at 102.

Despite his present representations to this Court, Lundy neither alleged in his complaint nor proved at trial that any malpractice liability was likely to result from his past partnership with Hochberg or Haymond. Nonetheless, assuming those allegations

12

had been "supported adequately by the evidence adduced at trial," *Lujan*, 504 U.S. at 561, they still would not present adequate grounds for invoking an Article III court's jurisdiction. Lundy admits in his letter brief that some malpractice liability "may" result from his *past* association with Hochberg, but he does not contend such liability is "imminent," or even likely. *Id.* at 560; *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *see also Lyons*, 461 U.S. at 102. Lundy alleges that *if* a malpractice suit is brought against him, and *if* that suit stems from a matter upon which Hochberg contributed during his partnership with Lundy from October 1997 to October 1999, and *if* it is found that Hochberg actually committed malpractice, and *if* Lundy is found derivatively liable for Hochberg's malpractice because Hochberg's Connecticut law license was suspended at that time, *then* Lundy will suffer an injury. We dismiss this "hypothetical" and "conjectural" injury as nothing more than an eleventh hour effort by Lundy to justify his litigation of these generalized, non-diverse, state law claims in an Article III court.

Lundy's "malpractice" theory of injury also encounters causation and redressability problems similar to those upon which his "denial of fees" theory foundered. Again, to the extent that Lundy might have any liability for Hochberg's conduct on cases stemming from the partnership at H&L, any negligent acts which could fairly be ascribed to Lundy have already occurred. Lundy has not been in partnership with, or otherwise associated with and responsible for, the practice of Hochberg and his present partners, despite Lundy's claims of part "ownership" over some pending contingent fees, since

October 1999. Therefore, there is no prospect of any liability to Lundy resulting from Hochberg's continued practice; an injunction against Hochberg's present and future practice can do nothing to redress Lundy's past injuries.[8]

Despite our holding, we in no way countenance Hochberg's apparent past violations of Pennsylvania law and the risks and harms to which he evidently exposed both his former partners and clients. Nonetheless, it is not the place of the federal courts to involve themselves in abstract disputes and provide advisory opinions on matters of state law, particularly where issues of state constitutional law are in dispute. Hochberg notes, and Lundy does not deny, that Lundy has already taken these very same unauthorized practice of law and related state law claims against Hochberg, Haymond, and Diamond to the Pennsylvania Court of Common Pleas for Philadelphia County. Hochberg Br. at 9. We trust that Pennsylvania's courts are capable of considering Lundy's state law claims and, unhampered by the jurisdictional strictures of Article III, of affording whatever relief is proven to be appropriate.

## IV.

For the foregoing reasons, we conclude that Lundy is without standing to contest

---

[8] We also note that Pennsylvania's statute of limitations for bringing attorney malpractice claims is two years. 42 Pa.C.S. §5524(7); *Garcia v. Community Legal Services Corp.*, 524 A.2d 980 (Pa. Super. 1987). Because Lundy dissolved his partnership with Hochberg and Haymond on October 8, 1999, the statute of limitations for any claims against Lundy regarding Hochberg's conduct has probably expired. This further mitigates the possibility that the "hypothetical" and "conjectural" malpractice injury to Lundy would ever occur. *See Lyons*, 461 U.S. at 102; *Lujan*, 504 U.S. at 560.

14

in the federal courts Hochberg's unauthorized practice of law and Haymond and Diamond's "conspiracy" to "aid and abet. Therefore, the District Court lacked jurisdiction to grant a permanent injunction against Hochberg. The Article III courts are for addressing the claims of individuals possessing particularized injuries that can actually be redressed by a favorable judgment. Concluding that Lundy is not such a person, we will vacate the orders of the District Court and remand for it to enter an order of dismissal.

_____

TO THE CLERK:

Please file the foregoing opinion.

By The Court,

  /s/  D. Brooks Smith  
Circuit Judge

DATED: October 22, 2003