**YONG SOON OH and Bernice Schatz on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**AT & T CORPORATION, Defendant.**

Civ. No. 99–2161(WHW).

United States District Court,
D. New Jersey.

Dec. 22, 2004.

James V. Bashian, Fairfield, NJ, Jeffrey M. Gottlieb, Berger & Gottlieb, Joshua N. Rubin, Abbey & Gardy, LLP, New York, NY, for Plaintiffs.

Robert D. Towey, David G. Tomeo, Lowenstein Sandler PC, Roseland, NJ, Steven M. Bierman, John J. Lavelle, Sidley, Austin, Brown & Wood LLP, New York, NY, Laura A. Caster, Neil C. Gever, AT & T Corp., Bedminster, NJ, for Defendant.

### CORRECTED OPINION *

WALLS, District Judge.

This matter is before the Court on the Parties' request that the Court approve the Proposed Class Settlement and Final Certification of the Proposed Settlement Class, and that it grant the Plaintiffs' Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Expenses. Oral arguments were heard by the Court at the final settlement hearing on September 9, 2004.

### FACTS AND PROCEDURAL BACKGROUND

In March 1999, the plaintiffs filed this action alleging that the defendant engaged in unfair and unreasonable practices by using singular-form directory assistance prompts ("What city, please?" and "What listing, please?") with its Area Code Directory Assistance ("ACDA") that allegedly prevented ACDA customers from receiving up to two listings per directory assistance call to the same area code, as was permitted by the defendant's tariffs then on file with the Federal Communications Commission ("FCC"). The plaintiffs sought damages as well as declaratory and injunctive relief.

On March 16, 2004, this Court issued an Order later amended on May 24, 2004, preliminarily approving the Stipulation and the Proposed Settlement set forth therein subject to further consideration at the settlement hearing. At that time, this Court conditionally certified the Proposed Settlement Class for the purposes of providing notice of the Proposed Settlement to class members. This Court also conditionally appointed the law firm of Abbey Gardy, LLP as Class Counsel to the Proposed Settlement Class.

The Proposed Settlement requires, among other things, that the defendant change its ACDA prompts to state "What cities?" and "What listings?" and that the defendant maintain an appropriate "loopback capability" (that is, the ability to request a second listing after obtaining a first listing on the same call) at any time that it offers to provide more than one directory listing on a single call to ACDA. Also under the Proposed Settlement, for two consecutive weekend days, the defendant shall provide the opportunity for callers to make unlimited calls to a toll-free, 1–800 number to obtain directory assistance listings. The two-day period shall be determined by the defendant. Another term of the Proposed Settlement is that for a three-month period beginning immediately after the conclusion of the two-day period referred to above, the defendant shall provide the opportunity for callers to ACDA to request up to three listings per each call for the current price of $1.99 per call. The parties submit that actions to be undertaken by the defendant in accordance with the Proposed Settlement have an aggregate value of $13 million.

In connection with the Proposed Settlement, the plaintiffs' counsel made an applica-

---

* It has come to the Court's attention that the Court's Opinion dated October 20, 2004 contained a number of grammatical errors and typos. Those errors are corrected and highlighted here in bold.

tion to the Court for an award of attorneys' fees and reimbursement of expenses. As part of the Proposed Settlement, the defendant has agreed not to oppose the application and will pay such fees and expenses so long as it does not exceed the aggregate amount of $3.4 million, plus interest at *The Wall Street Journal* prime rate.

## STANDARDS

### Standard for Certifying a Class

■ "[A] district court must first find a class satisfies the requirements of Rule 23, regardless whether it certifies the class for trial or for settlement." *In re Prudential Ins. Co. of America Sales Practices Litigation*, 148 F.3d 283, 308 (3d Cir.1998) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). There are four prerequisites to class certification: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). A claim will not be deemed atypical if "the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir.1992) (**citing** *Grasty v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123, 130 (3d Cir.1987)). In determining if class interests are adequately and fairly represented, the court must make two inquiries: (1) whether counsel representing the class is qualified to do so, and (2) whether there are any conflicts of interest between the named parties and the class they seek to represent. *In re Prudential Ins. Co. of America Sales Practices Litigation*, 148 F.3d at 312.

■ "If the Rule 23(a) criteria are satisfied, the court must also find that the class fits within one of the three categories of class actions defined in Rule 23(b)." *Id.* at 309. The parties in this action are requesting that the Proposed Settlement Class be certified under Fed.R.Civ.P. 23(b)(2) that a class action can be maintained if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." "Subsection (b)(2) class actions are 'limited to those class actions seeking primarily injunctive or corresponding declaratory relief.'" *Barnes v. American Tobacco Co.*, 161 F.3d 127, 142 (3d Cir.1998) (quoting 1 Newberg on Class Actions § 4.11, at 4–39). Furthermore, the class claims must be sufficiently cohesive to warrant adjudication by representation. *Id.* at 142–143. In determining whether a class should be certified under Fed.R.Civ.P. 23(b)(2), the Third Circuit has stated that "this requirement is 'almost automatically satisfied in actions primarily seeking injunctive relief.'" *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir.1994).

### Standard for Approving a Class Action Settlement

■ According to Fed.R.Civ.P. 23(e)(1)(C), the court may approve a settlement "on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate." The Third Circuit has adopted a nine-factor test to help district courts structure their final decisions to approve settlements as fair, reasonable, and adequate as required by Rule 23(e). "Those factors are: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation." *In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 785–86 (3d Cir. 1995). "The proponents of the settlement bear the burden of proving that these factors weigh in favor of approval." *Id.* "These factors are a guide and the absence of one or

more does not automatically render the settlement unfair. Rather, the court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness...." *In re American Family Enterprises,* 256 B.R. 377, 418 (D.N.J.2000) (citing *In re Orthopedic Bone Screw Products Liability Litigation,* 176 F.R.D. 158, 184 (E.D.Pa.1997)).

### Standard for Granting an Application for Attorneys' Fees and Expenses

■ In a class action settlement, the district court must thoroughly analyze an application for attorneys' fees and expenses. *In re Gen. Motors Corp.,* 55 F.3d at 819. "This rule holds true even where the parties to the class action have consented to an award of attorneys' fees because of a 'danger ... that the lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment for fees.'" *In re AremisSoft Corp. Securities Litigation,* 210 F.R.D. 109, 128 (D.N.J.,2002) (citing *In re Gen. Motors Corp.,* 55 F.3d at 819.) Furthermore, that the defendant is paying both the settlement amount and the attorneys' fees and expenses does not protect against this danger because the "defendant is interested only in disposing of the total claim asserted against it; ... the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Id.* (citing *In re Gen. Motors Corp.,* 55 F.3d at 819–20). The two methods generally used for evaluating fee applications are the percentage-of-recovery approach and the lodestar approach. *In re Gen. Motors Corp.,* 55 F.3d at 820–21. While the lodestar method is more commonly applied in statutory fee-shifting cases and the percentage-of-recovery method is used more often in common-fund cases, the Third Circuit recommends that the alternative method be used to double-check the fee. *Id.*

■ In awarding attorneys' fees using a percentage-of-recovery method in common-fund class actions, a district court should consider the following factors: (1) the size of the fund created and the number of persons benefited, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the complexity and duration of the litigation, (4) the risk of non-payment, (5) the amount of time devoted to the case by plaintiff's counsel, and (6) the awards in similar cases. *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195 n. 1 (3d Cir.2000). These factors need not be applied in a formulaic way, and their weight may vary on a case-by-case basis. *Id.* There is no set standard for determining a reasonable percentage and awards utilizing this calculation method can range from nineteen percent to forty-five percent of a common fund. *In re AremisSoft Corp. Securities Litigation,* 210 F.R.D. at 129 (citing *In re Computron Software, Inc., Sec. Litig.,* 6 F.Supp.2d 313, 322 (D.N.J.1998)). A lodestar award is calculated by multiplying the number of hours he or she reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer. *Id.* After arriving at this lodestar figure, the district court may, in certain circumstances, adjust the award upward or downward to reflect the particular circumstances of a given case. *Id.* All of these calculations should be reduced to writing. *Id.*

### DISCUSSION

### Final Certification of Proposed Settlement Class

■ Both the plaintiffs and the defendant agree that the proposed settlement class should be certified pursuant to Fed.R.Civ.P. 23(a) and (b)(2). As to the numerosity requirement, the parties request that the Court take judicial notice that the defendant has millions of customers and that at least thousands of such customers used the defendants ACDA service any time on or after April 1, 1997. While the Court is satisfied that there are at least thousands of people who used such service during the relevant time period, a number sufficient for purposes of class certification, the Court is troubled by the parties' failure to make a more accurate determination regarding the size of the class.

As to the common questions requirement, the parties agree that there are both common questions of law and fact. The prompts complained of were exactly the same and those same prompts were given to all users of the ACDA service. The common questions of law include whether the prompts were misleading, whether such prompts violated federal law, and whether injunctive relief would be appropriate.

As to the requirement that the claims of the representative party be typical of the claims of the class, the claims in this case arise from the same practice by the defendant and the claims are based on the same legal theories.

As to the requirement that the interests of the class be adequately and fairly represented, class counsel seems sufficiently qualified to represent the interests of the class based on the resumes of both the firm and its attorneys which were submitted to the Court and that class counsel has had other experience serving as class counsel. With regard to whether there is any conflict of interest between the named plaintiffs and the other class members, there is no evidence to suggest that such a conflict exists.

The requirement under Fed.R.Civ.P. 23(b)(2) is also satisfied. The defendant has acted in a way that is generally applicable to the class by using the same prompts for every caller using ACDA. By engaging in an action that is generally applicable to the entire class, injunctive relief is appropriate. Furthermore, that the plaintiffs seek primarily injunctive relief supports a finding that the Rule 23(b)(2) requirement is satisfied.

### Final Approval of Proposed Settlement

The first factor the Court considers is the complexity and duration of the litigation. This case has been pending for a considerably long period, first filed in New Jersey state court in April 1999. The Complaint states claims for breach of contract, common law fraud, negligent misrepresentation, and a violation of the New Jersey Consumer Fraud Act. It was removed to this Court in May 1999 on the ground that the Complaint arose out of a federal tariff filed by the defendant with the FCC. The Complaint was later amended to include a claim under Section 201(b) of the Communications Act of 1934 ("Communications Act"). On September 15, 1999, the defendant filed a motion to dismiss the Complaint. The Court denied the motion in part as to the state law claims, but found that the state law claims depended on the defendant's duties under the Communications Act. The Court referred the claim to the FCC and stayed the action pending the FCC's decision. The parties then underwent motion practice and discovery before the FCC. After the FCC issued its decision on March 19, 2002, the Court lifted the stay and the parties then filed several motions which were not ruled upon because the parties requested a stay pending mediation.

If the settlement is not approved, both parties contend that the litigation will be a lengthy and complex process as both sides are inclined to file numerous motions, post-trial briefs and appellate briefs. The parties recognize each other's willingness and resolve to pursue their positions until the judicial process has been thoroughly exhausted. The claims alleged by the plaintiffs, however, do not raise any legal issues that are extremely complex. The plaintiffs contend that "[a]lthough the litigation was not inherently complex, AT & T employed its most creative minds to make it as complex as possible." (Pls.' Mem. in Supp. of Proposed Settlement at p. 25.) Given the amount of time this case has been pending and the indication that the parties intend to pursue this case to the bitter end should the settlement not be approved, this factor weighs in favor of the Proposed Settlement.

The second factor the Court considers is the reaction of the class to the settlement. The deadline to file an objection with the Court has come and gone and only three class members have filed objections to the Proposed Settlement. Without looking at the substance of the objections, the circumstance that the number of objections filed is extremely minimal compared with the estimated thousands of people who are part of the class weighs in favor of approving the Proposed Settlement. Regardless of the relatively few objections filed, the merit of such objections will not be overlooked.

The first objection to the Proposed Settlement was filed by Mary Ann Johns on behalf of herself. Ms. Johns has a number of criticisms: First, she argues that the representative parties have not fairly and adequately protected the interests of the class because the benefits of the settlement will flow not only to the class members but also to the public at large. Second, she claims that she was denied access to the Stipulation containing the Proposed Settlement. Ms. Johns claims that she tried to access the two websites referenced in the Notice of the Proposed Settlement directing the class members to the Stipulation, but that the one website was not functioning on April 20, 2004 when she made her attempt and that the other website only contained the notice. Ms. Johns also claims that although the Notice said the Stipulation was available via email, the only document available was the Notice. Her third and final objection is to the award of attorneys' fees and expenses to the plaintiffs' counsel on the ground that the attorneys have not adequately represented the interests of the class members because the benefits of the settlement flow to the public at large and not just the class members.

The second objection was filed by Michael R. Ray on behalf of himself. He also makes a number of objections to the Proposed Settlement and the application for attorneys' fees and expenses. His first objection is to the proposed action by the defendant of giving callers a 1–800 number to use to make unlimited calls to obtain ACDA listings for a two-day period. He charges on the ground that this will only be a benefit to class members who actually need directory assistance in that particular two-day period. His second objection is that the class members who were actually injured by the defendant's practices by having to call and be charged a second time for a second listing should be entitled to money damages. Mr. Ray's third objection is to the requested attorneys' fees which he feels are too high in relation to the benefits that would flow to the class under this Proposed Settlement.

The third and final objection was filed by James J. Savage. Mr. Savage is represented in this case by John M. Lusk, Jr., Esq., who was the only objector to appear at the final settlement hearing. Mr. Savage has a number of objections to the Proposed Settlement. First, he argues that the defendant's plan to change the prompts to "What cities? What listings?" does not provide any real benefit to those who were injured by the defendant's actions. Second, Mr. Savage argues that the Proposed Settlement contains no language providing a minimum cash payout to the class and that the Notice fails to inform class members of the aggregate monetary value of the settlement. Mr. Savage argues that without such information, it is impossible for any class member to determine whether this a fair, adequate and reasonable settlement. Mr. Savages third objection is to the award of attorneys' fees in that he feels the amount sought is grossly excessive in light of the fact that the class members are not receiving monetary compensation. In addition to these objections, at the final settlement conference, Mr. Lusk argued that the Proposed Class Members would be better compensated by a coupon settlement rather than supposed benefits they would get under the Proposed Settlement.

The objections can be grouped into three categories. The first category is for objections regarding the adequacy of the benefits that flow to the class from the Proposed Settlement. The second category deals with the award of attorneys' fees. The third category of objections can be said to pertain to problems with the Notice and the Stipulation.

With regard to the objections based on the adequacy of the relief being offered, the plaintiffs argue that the injunctive relief proposed in the settlement is both the best possible outcome of this case and is aligned with the primary relief requested in the Complaint. The plaintiffs assert that the injunctive relief is the best possible outcome because of the challenges they would have faced had they tried to certify a damages class. More specifically, the plaintiffs state that because of the evidence the defendant presented showing that most callers to ACDA only want one listing, plaintiffs would have had difficulty in satisfying the requirement of Fed.R.Civ.P. 23(b)(3) that common questions predominate because individual

questions of each caller's intent would predominate instead. The plaintiffs contend that had they attempted to certify a damages class and lost, they would have lost valuable bargaining power.

The Court agrees that the terms of the Proposed Settlement are probably the best outcome that the plaintiffs could achieve for the class in light of their failure or inability to accurately determine the size of the class. Without knowing the approximate size of the class, it is very difficult to accurately value any proposed settlement. As to Mr. Lusk's proposal of a coupon settlement, there are a number of reasons why that type of settlement would not be an appropriate remedy. First, it would be too cumbersome to administer. Second, quantifying a coupon settlement would be just as difficult as trying to measure damages because there is no way of knowing how much each Proposed Class Member was damaged without having a trial given that not every caller wanted to request a second listing. Third, because of the difficulties in administering a coupon settlement and the possibility that persons who were not injured could obtain the coupons, a coupon settlement could end up providing a benefit to the public to the detriment of the class members.

In response to Ms. Johns' contention that the plaintiffs have not fairly and adequately protected the interests of the class because the benefits of the proposed settlement are being conferred on the public at large, not just **members** of the class, the plaintiffs contend that most injunctive settlements benefit people outside the class and such does not detract from the benefit that she herself will receive. The defendant also answers this argument by noting that without the efforts of the plaintiffs, there would be no benefits provided to anyone at all. Courts have previously approved settlements that propose injunctive relief that will benefit the class members and the public at large. *See In re American Family Enterprises,* 256 B.R. 377, 429–30 (D.N.J.2000).

As to the second category of objections about the application for attorneys' fees by the plaintiffs (to be paid by the defendant), the defendant makes no argument on this

issue as it is agreeable to paying up to $3.4 million plus interest. These objections are discussed further in the discussion on the application for attorneys' fees and expenses.

About the third category of objections to the Notice and the Stipulation, the defendant states that upon becoming aware of the fact that the Stipulation was not accessible from the web sites referenced in the Notice, the parties immediately added the Stipulation to the documents available on the web sites and with the permission of this Court published an Amended Summary Notice of Settlement in the *USA Today* on May 20 and 21, 2004, extending the time for class members to object to the settlement. In sum, this objection has been addressed and is therefore moot.

As to Mr. Savage's objection that the Summary Notice, Notice and the Stipulation fail to state the aggregate value of the settlement, his assertion is incorrect because the aggregate value of the settlement, $13 million, is clearly stated in all three documents.

The third factor the Court considers is the stage of the proceedings. "Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp., Derivative Action Litigation,* 232 F.Supp.2d 327, 334 (D.N.J.,2002) (citing *In re Cendant,* 264 F.3d at 235). "To guarantee that a proposed settlement is the result of informed negotiations, 'there should be an inquiry into the type and amount of discovery the parties have undertaken.'" *Id.* (quoting *In re Prudential,* 148 F.3d at 319). As noted earlier, while discovery in this Court has been limited, the parties engaged in discovery as part of the proceedings before the FCC and confirmatory discovery in connection with the mediation process. Given that this litigation has been pending for over five years and the parties have had the opportunity to engage in discovery under the FCC, it is reasonable to conclude that the parties have had the chance to adequately evaluate the merits of their claims and defenses. This factor also weighs in favor of approving the Proposed Settlement.

The fourth factor the Court considers is the risks of establishing liability. "A court considers this factor in order to 'examine what the potential rewards (or downside) of litigation might have been had ... counsel decided to litigate the claims rather than settle them.' " *In re Cendant Corp., Derivative Action Litigation,* 232 F.Supp.2d 327, 334 (D.N.J.,2002) (quoting *In re Cendant,* 264 F.3d at 237). The defendant contends that the plaintiffs' likelihood of success on their common law state law claims was slim. The plaintiffs asserted six causes of action against the defendant comprised of four state law claims, one claim for injunctive relief, and one claim alleging a violation of section 201(b) of the Federal Communications Act ("FCA"). This Court dismissed the claim for injunctive relief, found that the plaintiffs' state law claims arise under federal law because the sole source of these claims is the tariffs filed by the defendant with the FCC, and referred the case to the FCC. The FCC found that the defendant's use of singular form prompts was an "unjust" and "unreasonable" practice. If this case were to proceed on the remaining claims, the defendant would argue that the remaining state law claims are preempted by the FCA which provides a private right of action for damages by any person who is injured by a carrier's violation of the FCA. 47 U.S.C. § 206 (2000). The defendant would use as support for this argument this Court's finding that the state law claims arise under federal law. Perhaps more importantly, given that this Court has already dismissed plaintiffs' claim for injunctive relief, the risks of establishing liability so as to achieve the relief offered in the Proposed Settlement would have been great.

The fifth factor the Court considers is the risks of establishing damages. Whether damages would have been a factor in this case depends on whether the plaintiffs would have attempted to certify a damages class or a class for injunctive relief. The logistics of establishing damages in this case would have been a nightmare. To state a claim for damages under section 207 of the FCA, each caller must prove that he was actually damaged by the carrier's violation. The requirement that the subjective intent of each caller as to whether she intended to request a second listing be demonstrated would complicate these inquiries even further. Actual damages would also have to be proved for the breach of contract, common law fraud, and negligent misrepresentation claims. Proving damages in this case would require the court to look at every caller and every call. The evidence plaintiffs would have to present to demonstrate the subjective intent and actual damages of each caller would be extensive to say the least. Given the difficulty of proving damages and that the plaintiffs' primary goal was to obtain injunctive relief, this factor weighs in favor of the settlement.

The sixth factor the Court considers is the risks of maintaining a class action. The parties in this case have stipulated to certify a class for settlement purposes only. Before the parties entered into the Proposed Settlement agreement, a motion for class certification was pending before the Court. The parties agree that the possibility of obtaining class certification under Fed.R.Civ.P. 23(b)(3) was unlikely. The plaintiffs point once again to the difficulties they would have faced in trying to certify a damages class and the fact that the primary relief being sought in the complaint was injunctive and declaratory. The defendant concurs in the conclusion that the plaintiffs would have faced a considerable risks in attempting to certify a damages class. The defendant would have offered statistical evidence that the effect of correcting the prompts was a change in the callback rate of only around 1%, arguing that this indicates that most people are not seeking a second listing when they call. As the subjective intent of each class member would have been an issue in the case, making it difficult to find that common questions of fact or law predominate over issues affecting individual members, it is likely this court would have denied certification of the class under Rule 23(b)(3).

The seventh factor the Court considers is the ability of the defendant to withstand a greater judgment. There is no question that being the large conglomerate that it is, the defendant could have withstood a significantly greater judgment. While this factor would, therefore, seem to weigh against the

proposed settlement, the difficulties the plaintiffs would have had in certifying a damages class and proving damages diminish the importance of this factor here.

The eighth factor this Court considers is the range of reasonableness of the settlement in light of the best recovery. Neither party has speculated on what the best recovery plaintiffs could have obtained had they decided to pursue their claims. Given the possibility that the plaintiffs would have been unable to certify a damages class and that discovery revealed the number of potential class members affected by the defendant's practices to be smaller than alleged by the plaintiffs, it is unlikely that the plaintiffs would have been successful in procuring for the class any significant amount of monetary relief. In light of all the obstacles the plaintiffs would have to overcome to achieve any monetary compensation for the class, the Court determines that the terms of the Proposed Settlement do represent the best outcome of this case. This factor also weighs in favor of the settlement.

The ninth and final factor this Court considers is the range of reasonableness of the settlement in light of all the attendant risks of litigation. If the plaintiffs were unable to certify a damages class, the most each plaintiff and each class member could recover against the defendant would be their actual damages in increments of $0.75 to $1.99 (the cost of an additional call to ACDA during the class period). Given that there were significant risks of not certifying a damages class, and the time and expense it would take to prove the actual damages of each caller, this factor weighs in favor of the Proposed Settlement.

### Plaintiffs' Counsel's Application for Attorneys' Fees and Expenses

As part of the Proposed Settlement, the plaintiffs' counsel applies to the court for an award of attorneys' fees and expenses in an amount of $3.4 million, plus interest at *The Wall Street Journal* prime rate to be paid by the defendant. Pursuant to the Proposed Settlement, the defendant does not oppose the plaintiffs' counsel's application because it totals no more than $3.4 million plus certain interest as mentioned in the Pro-

posed Settlement. As seen above, each of the objectors **takes** issue with the total amount of the award charging that it is excessive in light of the settlement. The Court considers the application under both the percentage-of-recovery method and the lodestar method.

### The Percentage–of–Recovery Method

The first factor the Court considers is the size of the fund created and the number of persons benefitted. "As a general rule, as the size of a fund increases, the appropriate percentage to be awarded to counsel decreases." *In re Cendant,* 232 F.Supp.2d 327, 337 (D.N.J.2002). The Third Circuit has stated that "the basis for this inverse relationship is the belief that 'in many instances the increase [in recovery] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel.'" *In re Prudential,* 148 F.3d at 339. The Stipulation and Notice state that the aggregate value of the Proposed Settlement is $13 million. The plaintiffs' expert undertook complex calculations to determine a range of values of the Proposed Settlement. The expert estimated that the value of the settlement in terms of reduced expenditure on ACDA and reduced time required to obtain the desired listings falls within the $9 to $22.7 million range. The plaintiffs' application for fees and expenses requests an amount totaling $3.4 million. Once the expenses plaintiffs' counsel is seeking reimbursement for, $98,553.95, are subtracted from $3.4 million, the award of attorneys' fees being requested is $3,301,446.05. Based on the aggregate value of the settlement in the Stipulation, the requested attorneys' fees represent approximately 25.3% according to the Court's calculations. From the plaintiffs' experts calculations, plaintiffs estimate that the fee is equal to between 13% and 27.4% of the total settlement benefit. All of these percentages are within the reasonable range of percentages previously approved by district courts. As for the size of the benefitted class, the plaintiffs do not offer a precise estimate of the class size but contend that "[i]t is a safe assumption that thousands, if not tens of thousands of [AT & T's custom-

ers] used ACDA." (Pls.' Mem. in Supp. of Proposed Settlement at p. 10.) As neither the size of the class nor the value of the settlement is exceedingly large, this factor weighs in favor of approving the application for attorneys' fees.

The second factor the Court considers is the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel. "The absence of large numbers of objections mitigates against reducing fee awards." *In re Cendant*, 232 F.Supp.2d at 337 (citations omitted). As mentioned previously, there are three objections to the application for attorneys' fees and the basis for each of those objections is that the fee is too large relative to the proposed settlement benefits. That only three objections were filed after the Notice and Summary Notice were posted for two consecutive business days in *USA Today* on two separate occasions weighs in favor of granting the application for attorneys' fees.

The third factor the Court considers is the skill and efficiency of the attorneys involved. The named plaintiffs in this case, Yong Soon Oh and Bernice Schatz, are represented by several attorneys from different firms. Almost all of their attorneys have submitted affidavits, time records, attorney resumes, firm resumes expounding on the expertise of the lawyers. The affidavits and resumes list the educational backgrounds of the attorneys and the numerous cases in which the attorney has acted as counsel or lead counsel where class action settlements have been approved. The cases they have prosecuted range from violations of antitrust and securities laws to consumer laws. After reviewing these materials, the Court is satisfied that the firms and attorneys involved in this case possess significant skill and experience in class action lawsuits. This factor weighs in support of the application for attorneys' fees.

The fourth factor for the Court to consider is the complexity and duration of the litigation. This litigation does not appear to present complex legal issues. But it is clear that the plaintiffs' attorneys would have had several large hurdles to overcome had they pursued certification of a damages class. Furthermore, this case has been pending for over five years and the parties have indicated their intent to pursue this litigation to the bitter end should the settlement not be approved. This likely means that many more motion battles would have to happen before a dispositive outcome would be reached. This factor also weighs in favor of approving the application for attorneys' fees.

The fifth factor the Court considers is the risk of nonpayment. Other courts have found that this factor weighs in favor of an application for fees when the defendants were close to insolvency, *Gunter*, 223 F.3d at 199, or lacked significant unencumbered assets against which plaintiffs could levy had a judgment been obtained. *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D.Pa.2000). Here, there is no indication that there is a risk of non-payment by the defendant. This factor weighs against the application for attorneys' fees.

The sixth factor the Court considers is the amount of time devoted to the case by plaintiffs' counsel. According to the time sheets and affidavits submitted by plaintiffs' counsel, plaintiffs' counsel devoted approximately 3,166 hours to this case. The bulk of these hours were logged by Lead Counsel Abbey Gardy, LLP.

The seventh and final factor the Court considers are awards in similar cases. As stated, the Third Circuit has noted that "[o]ne court has noted that the fee awards have ranged from nineteen percent to forty-five percent of the settlement fund." *In re Cendant Corp. PRIDES Litigation*, 243 F.3d 722, 736 (3d Cir.2001) (quoting *In re GMC*, 55 F.3d 768, 822 (3d Cir.1995)) However, "[t]hese varying ranges of attorneys' fees confirm that a district court may not rely on a formulaic application of the appropriate range in awarding fees but must consider the relevant circumstances of the particular case." *In re Cendant Corp. PRIDES Litigation*, 243 F.3d at 736. Another court in this district made a study of "fee awards in common fund cases decided over the last few years," finding a series of cases which provided for attorney awards ranging from 27.5% to 33.8% and totaling from $1.46 million to $37.1 million. *In re Safety Components*, 166

F.Supp.2d at 101. Another court noted that "[s]cores of cases exist where fees were awarded in the one-third to one-half of the settlement fund." *In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J.2002). Still other courts have used twenty-five percent in cases with multi-million dollar settlements as a "benchmark ... in order to prevent a windfall to counsel." *Erie County Retirees Assoc. v. County of Erie, Pa.*, 192 F.Supp.2d 369, 381 (W.D.Pa.2002). The Third Circuit has instructed district courts to review other awards by looking at cases involving settlements of similar size.

The awards in cases with settlements of similar size are comparable to the attorneys' fees requested in this case. *See e.g., In re Rent–Way Securities Litig.*, 305 F.Supp.2d 491 (W.D.Pa.2003) (approving a $25 million settlement and awarding $6.25 million in attorneys' fees, approximately twenty-five percent of the settlement), *In re Corel Corp. Inc. Sec. Litig.*, 293 F.Supp.2d 484 (E.D.Pa.2003) (approving a $7 million settlement and awarding attorneys' fees of $2.3 million), *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D.Pa.2000) (approving attorneys' fees equaling approximately thirty-three percent of a $7.3 million settlement fund), *In re Computron Software, Inc.*, 6 F.Supp.2d 313 (D.N.J.1998) (approving attorneys' fees equaling approximately twenty-five percent of a $15 million settlement), *Lazy Oil Co. v. Wotco Corp.*, 95 F.Supp.2d 290 (W.D.Pa.1997) (awarding attorneys' fees equaling approximately twenty-five percent of a $18.9 million settlement). As the request in this case is for approximately twenty-five percent of the value of the Proposed Settlement, this factor also weighs in favor of awarding the attorneys' fees as requested.

### The Lodestar Method

A court can use the lodestar method to check that the percentage-of-recovery method does not result in an unreasonably high hourly fee. A lodestar award is calculated by multiplying the number of hours he or she reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer. To examine the lodestar factor effectively, a "court should make explicit findings about how much time counsel reasonably devoted to a given matter, and what a reasonable hourly rate would be for such services." *Gunter*, 223 F.3d at 199–200. "Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *In re Cendant*, 232 F.Supp.2d at 342 (citing *In re Safety Components*, 166 F.Supp.2d at 104).

The plaintiffs' attorneys' records indicate that the attorneys spent approximately 3,166 hours on this case. This is based on submissions from the four law firms that worked on the case. Based on their usual hourly rates, the plaintiffs calculate a combined lodestar of $1,538,133. They assert that their fee request of $3,301,446 represents a 2.15 multiple of the lodestar. The question for the court is whether this multiplier is justified by the facts of this case. *In re Cendant Corp. PRIDES Litigation*, 243 F.3d at 742. "A court may multiply the lodestar calculation to reflect 'the risks of nonrecovery, to reward an extraordinary result, or to encourage counsel to undertake socially useful litigation.'" *In re Cendant*, 232 F.Supp.2d at 340–41 (quoting *In re Safety Components*, 166 F.Supp.2d at 103). The plaintiffs contend that all of factors are present in this case. They argue that the risk of nonrecovery was high when counsel first took the case because there was no law directly on point and that the risk was intensified when the proceedings were transferred to the FCC. While these arguments have some merit, more persuasive is the certainty that plaintiffs would have a difficult time certifying a damages class and establishing actual damages in this case. The plaintiffs contend that the result reached in this case is extraordinary and therefore deserving of reward. They consider this result extraordinary because of the defendant's supposed advantages in the case. While this court recognizes that the defendant is a large corporation with many available resources, it is no different from most defendants in class action lawsuits. As to whether this is "socially useful litigation," the plaintiffs contend that "this is an excellent example of how a class action can redress one of the thousand little injuries that each of us suffers each

day-whether we know it or not...." (Pls.' Mem. in Supp. of the Proposed Settlement at p. 27.) While the alleged wrongdoing by the defendant is not one of the most egregious wrongs committed upon society, it is fair to say that by bringing this cause of action, plaintiffs have attempted to correct a wrong being perpetrated on the many people who call the defendant's ACDA seeking two listings.

Therefore, while only two of the three factors appear to weigh in favor of the 2.15 lodestar multiplier, the fees being requested by the plaintiffs' counsel are not unreasonable.

*Expenses*

▆▆▆▆ "Counsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re Cendant,* 232 F.Supp.2d at 343 (citing *In re Safety Components,* 166 F.Supp.2d at 104, *Abrams v. Lightolier, Inc.,* 50 F.3d 1204, 1225 (3d Cir.1995)). The plaintiffs' counsel seeks reimbursement of expenses totaling $98,553.95. This total is based on submissions from the four firms who represented the plaintiffs in this case. Each firm has submitted an expense report detailing the types of expenses and the cost of each item. The expenses are for: (1) travel and lodging, (2) local meetings and transportation, (3) depositions, (4) photocopies, (5) messengers and express services, (6) telephone and fax, (7) Lexis/Westlaw legal research, (8) filing, court and witness fees, (9) overtime and temp work, (10) postage, (11) the cost of hiring a mediator, and (12) NJ Client Protection Fund–*pro hac vice.* This last expense was documented by Jeffrey M. Gottlieb who is an attorney with Berger & Gottlieb, a New York law firm.

The affidavits and submissions of counsel demonstrate that the requested expenses were adequately documented, reasonable, and appropriately incurred. Several courts have held that photocopying expenses, telephone and facsimile charges, and postal, messenger, and express mail service charges are reasonably incurred in connection with the prosecution of a large litigation. *In re Safety Components,* 166 F.Supp.2d at 108 (citing

*Abrams,* 50 F.3d at 1225; *Cullen,* 197 F.R.D. at 151; *In re Residential Doors Antitrust Litig.,* No. 96–2125, 1998 WL 151804, at *2 (E.D.Pa. April 2, 1998)). Similarly, witness fees and the costs associated with expert witnesses and consultants are often deemed incidental to litigation. *In re Safety Components,* 166 F.Supp.2d at 108 (citing *Cullen,* 197 F.R.D. at 151). Computer-assisted research is also essential to modern complex litigation. *Id.*

**CONCLUSION**

The Parties' Motion seeking Final Certification of the Proposed Settlement Class is GRANTED, the Proposed Settlement is APPROVED, and the Plaintiffs' Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Expenses is GRANTED.

**ORDER**

It is on this 22nd day of December, 2004:

ORDERED that the Proposed Class Settlement is APPROVED; Final Certification of the Proposed Settlement Class is GRANTED; and Plaintiffs' Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Expenses is GRANTED.

This Order shall constitute the "Final Judgment" set forth in paragraph seventeen (17) of the Stipulation of Settlement.